[No. B058584. Second Dist., Div. Four. Mar. 3, 1993.]

JOO LEONG TAN, Plaintiff and Appellant, v.
KRISTYN GODDARD et al., Defendants and Respondents.

**COUNSEL**

Craig W. Englund for Plaintiff and Appellant.

Ahrens & Watten, Patrick Dirk Flannery and Stephen A. Rosa for Defendants and Respondents.

## OPINION

**EPSTEIN, J.**—In this case, we apply *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d, 834 P.2d 696] and conclude that the trial court erred in granting summary judgment against appellant on the now rejected doctrine of implied reasonable assumption of the risk.

### FACTUAL AND PROCEDURAL SUMMARY

■ Since this case reaches us after a full grant of summary judgment against the appellant, we review the moving and opposing papers to determine whether respondent had succeeded in negating at least one essential element in each of appellant's causes of action, or otherwise had established an entitlement to judgment as a matter of law. In doing so, we follow the familiar rule that respondent's declarations are strictly construed, and those of appellant liberally construed, to the end that "doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion." (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177]; *Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

In fact, however, there is little material dispute about the underlying facts; the issues before the trial court and here concern the proper application of legal principles to those facts.

Appellant, Joo Leong Tan, was a 26-year-old Malaysian who wanted to become a jockey. He enrolled in the World Jockey Racing School, the "dba" of Kristyn Goddard. Both are named as defendants in Tan's lawsuit, along with Bill Davis, the school's horse trainer, and the owner of the facility at which Tan's instruction, and his accident, occurred. At the time of his enrollment, Tan was not fluent in the English language and had no experience or knowledge about riding horses.

During his course of instruction at the school he had fallen from horses and had seen others fall, but had not witnessed a serious accident before his own, some eight months after he enrolled. Prior to the accident, he had only walked, trotted, jogged and lightly galloped horses and had not advanced to the point of running or racing a horse. He had been assured by the school staff that the horses he was given to ride were safe and stable animals, and he believed that to be true.

In May 1988, after returning from school break, Tan was told by Davis, the horse trainer, that one of the horses Tan had been riding had injured its left foot in its stall, and that he should ride the horse easily "to see how it was." Tan did as he was told, and found that the horse, Faraway Falcon, was "off"—that is, it did not walk or behave normally. He reported this to Davis, and repeatedly asked Davis if the horse was fit to ride. Davis repeatedly assured Tan that it was, and gave him precise instructions on where and how to ride the horse. Relying on Davis's experience and position at the school, Tan followed those instructions.

On May 26, 1988, Davis told Tan to exercise Faraway Falcon. While walking the horse from the stables, Tan noticed that it was still "off," and so informed Davis. Nevertheless, Davis instructed Tan to "backtrack" the horse. That meant jogging the horse on the school's outer track, in a direction opposite from that in which horses are normally ridden.

The school had been located at the Riders Up Farm in Hemet when Tan enrolled. Later, it moved to Leona Downs in Palmdale, and it was there that the accident occurred. The Leona Downs track was "very rocky, with the greatest concentration of rocks being on the outside portion of the track"— the portion Tan was told to use in jogging Faraway Falcon.

Tan followed Davis's instructions. While "taking it easy" with the horse on the outer track, Tan heard the horse step on an object, upon which the horse's front legs gave way and the horse went down on the track allegedly causing Tan's injuries. Tan had received no instruction on what to do if a horse went down.

Tan filed an action against Goddard, Davis, the school and the operators of Leona Downs. The suit was based on negligence, breach of warranty and premises liability. Goddard answered for herself and for the school as her DBA. Davis also answered. Later, a first amended complaint was filed, by stipulation, on the same theories as before. It, too, was answered by Goddard, Davis, and the operators of the Leona Downs track. It became the charging pleading.

After deposing Tan, Goddard and Davis brought a motion for summary judgment, arguing that Tan had released them from liability and that he had reasonably assumed the risk of the injuries he had suffered, and therefore was barred from recovery. The motion was contested.

After hearing argument on the motion, the trial court concluded that the contract signed by Tan lacked the necessary clarity to operate as a general

release, and denied summary judgment on that ground. But the court also found that Tan reasonably and impliedly had assumed the risk of the kind of injury he had suffered and, on that ground, granted full summary judgment.[1]

Tan filed a timely notice of appeal.

## DISCUSSION

The summary judgment motion in this case, and the principal appellate briefing, all occurred before our Supreme Court announced its decision in *Knight* v. *Jewett, supra,* 3 Cal.4th 296 and in a companion case, *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724]. At that time the law on implied reasonable assumption of the risk was in doubt, with authority that it did and did not survive adoption of the comparative negligence rule in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. The leading authority for the proposition that the doctrine did survive was *Ordway* v. *Superior Court* (1988) 198 Cal.App.3d 98 [243 Cal.Rptr. 536]; the principal opposing case was *Segoviano* v. *Housing Authority* (1983) 143 Cal.App.3d 162 [191 Cal.Rptr. 578]. This split of authority was resolved by *Knight* and *Ford*, and we have had the benefit of supplemental briefing by the parties on the effect of those decisions on the issues before us now. The new decisions are dispositive on the principal issue of implied reasonable assumption of the risk.

The plurality opinion in *Knight*, by Justice George, recounted the considerable confusion created in the cases by the ambiguous doctrine of assumption of the risk. (3 Cal.4th at p. 303.) The issue was of largely academic interest so long as contributory negligence operated as a complete bar to a plaintiff's recovery of damages. But once the comparative negligence doctrine was adopted in *Li*, the issue became one of far more than rhetorical interest. (3 Cal.4th at pp. 304-305.) Language in *Li* distinguished between reasonable and unreasonable assumption of the risk, and gave rise to the theory that the former was a complete bar to recovery, while the latter was merely subsumed under the comparative negligence rule. The *Knight* plurality rejected that dichotomy. (3 Cal.4th at pp. 307-311.) It concluded, instead, that the real demarcation is between primary and secondary assumption of the risk. In primary assumption of risk cases, there simply is no duty of care owed to the plaintiff by the defendant, and without duty there can be no actionable negligence. In secondary assumption of risk cases, there is a duty but defendant's alleged breach may be offset by plaintiff's negligence under the *Li* doctrine. (3 Cal.4th at pp. 311-314.)

---

[1]The motion was granted in favor of Goddard and Davis; no mention was made of the Leona Downs parties. They appeared at the summary judgment hearing, but the record before us does not reflect any joinder by them in the summary judgment motion.

That took the *Knight* plurality to an examination of duty in the context of the case before it. That case, like ours, arose from a summary judgment granted in favor of defendants. The plaintiff was a young woman who had engaged in a vigorous game of tag football after a Super Bowl game. Defendant, a player on the opposing team, ran into her, knocked her down, and stepped on her hand. This resulted in an injury to a finger that eventually led to its amputation. There was no evidence that defendant had intended to harm plaintiff. (3 Cal.4th at pp. 300-301.) The court concluded that his conduct was, at most, negligent rather than reckless or intentionally harmful. (3 Cal.4th at p. 320.)

The plurality reviewed the body of case law concerning injuries to spectators and participants at athletic events. At least with the more active sports, most courts have concluded that players and operators owe no duty to coparticipants for injuries commonly associated with the sport. These risks often are inherent in the sport itself, such as moguls on a downhill ski slope. Using skiing as an example, the court pointed out that an operator of a ski resort has no obligation to remove moguls from the hill because while they are typical of conditions or conduct that may be seen as dangerous, they "often are an integral part of the sport itself." (3 Cal.4th at p. 315.) But the operator does have a duty of due care to maintain towropes on the slope in a safe, working condition so that skiers are not exposed to an increased risk of harm. (3 Cal.4th at p. 316.) The plurality also referred to the numerous cases in which players and spectators have been denied recovery for injuries that are considered to be inherent risks of the sport. (3 Cal.4th at pp. 316, 317, 319.)

This doctrine, an aspect of the maxim *volenti non fit injuria*, denies recovery to a person who voluntarily assumes the risk of injury. As Justice Cardozo put it in a classic assumption of risk case, "[t]he timorous may stay at home." (*Murphy* v. *Steeplechase Amusement Co.* (1929) 250 N.Y. 479 [166 N.E. 173, 174].)

The *Knight* plurality pointed out that the scope of a defendant's legal duty in the sports context will depend not only on the nature of the sport itself, but also on the defendant's "role in, or relationship to, the sport" (3 Cal.4th at p. 317); and that "in the sports setting, as elsewhere, the nature of the applicable duty or standard of care frequently varies with the role of the defendant whose conduct is at issue in a given case." (3 Cal.4th at p. 318.) We will return to this concept later.

The plurality concluded that, as applied to the case before it, the defendant tag football player owed no duty to plaintiff beyond avoiding reckless and

intentionally harmful conduct—a duty that he did not breach. (3 Cal.4th at pp. 301, 320.) Since the case turned on whether defendant owed a duty of due care to plaintiff, it was not necessary to examine the plaintiff's subjective awareness of the danger involved, or whether she impliedly agreed to relieve defendant of a duty. (3 Cal.4th at p. 315.)

As we have pointed out, the lead opinion in *Knight* was by a plurality. It was comprised of three members of the court. Nevertheless, its essential conclusion, that reasonable implied assumption of the risk may diminish but does not bar recovery, commanded a majority of the court. A fourth justice, Mosk, J., was of the view that it was time to jettison the entire assumption of the risk doctrine. Justice Mosk agreed, however, that "the liability of sports participants should be limited to those cases in which their misconduct falls outside the range of the ordinary activity involved in the sport" and that the over exuberant conduct in the *Knight* case was not of that nature. (3 Cal.4th at p. 321.)

■ The principal conclusion in *Knight* was summarized in the plurality opinion in its companion case, *Ford* v. *Gouin*: "the assumption of risk doctrine operates as a complete bar to a plaintiff's action only in instances in which, in view of the nature of the activity at issue and the parties' relationship to that activity, the defendant's conduct did not breach a legal duty of care owed to the plaintiff. As *Knight* also explains, in general the legal duty applicable to a coparticipant in an active sport simply is a duty to avoid either intentionally injuring another participant or engaging in conduct so reckless as to bring it totally outside the range of the ordinary activity involved in the sport. A coparticipant in an active sport ordinarily bears no liability for an injury resulting from conduct in the course of the sport that is merely careless or negligent." (3 Cal.4th at p. 342.)

*Ford* involved a coparticipant sports situation in which defendant was driving a boat towing plaintiff who was water-skiing barefoot and backward on the Sacramento River Delta. He was injured when his head struck a tree limb that extended over the water. A majority of the court agreed that plaintiff was barred from recovery on ordinary negligence principles, although two members of the court were of the view that Harbors and Navigation Code section 658, subdivision (d) imposed a duty of care under the facts presented. (3 Cal.4th at p. 346, 364.)

■ Our case is different. Here, we do not deal with the relationship between coparticipants in a sport, or with the duty that an operator may or may not owe to a spectator. Instead, we deal with the duty of a coach or trainer to a student who has entrusted himself to the former's tutelage. There

are precedents reaching back for most of this century that find an absence of duty to coparticipants and, often, to spectators, but the law is otherwise as applied to coaches and instructors. For them, the general rule is that coaches and instructors owe a duty of due care to persons in their charge. (See Lowell, Liability for Sports Activities, in Law and Amateur Sports (1982) pp. 45, 61; Champion, Fundamentals of Sports Law (1990) § 3.1, p. 60; and see Miyamoto, *Liability of Colleges and Universities for Injuries During Extramural Activities* (1988) 15 J. of C. & U.Law 149, 152; Jones, *College Athletes: Illness or Injury and the Decision to Return* (1992) 40 Buffalo L.Rev. 113, 141; Rest.2d Torts, § 314A, and com. (b); *Stehn* v. *Bernarr MacFadden Foundations, Inc.* (6th Cir. 1970) 434 F.2d 811, 813; *Everett* v. *Bucky Warren, Inc.* (1978) 376 Mass. 280 [380 N.E.2d 653, 659]; *Miller* v. *Macalester College* (1962) 262 Minn. 418 [115 N.W. 666]; and *Knight* itself, *supra*, 3 Cal.4th at p. 318 [citations to cases involving suits against sports instructors and coaches].) The coach or instructor is not, of course, an insurer (*Stehn* v. *Bernarr MacFadden Foundations, Inc.*, *supra*, 434 F.2d at p. 813), and a student may be held to notice that which is obvious and to ask appropriate questions (see *Vendrell* v. *School District No. 26C, Malheur County* (1962) 233 Ore. 1 [376 P.2d 406].) But all of the authorities that comment on the issue have recognized the existence of a duty of care.

As we have noted, the *Knight* court makes several references to the role of the defendant in relation to the sport or activity as being an important aspect of the inquiry about duty. If the role is that of coparticipant, there generally is no duty with respect to ordinary negligence. But here we are dealing not with a sports participant, but with an instructor who is training a student how to become a participant.

According to his testimony and declaration, Tan placed himself in the hands of the jockey school's riding trainer. He did what the instructor, Davis, told him to do. Davis was not a coparticipant in sport with Tan, but was charged with instructing him how to ride a horse. It was Davis who assigned Faraway Falcon to Tan to ride, knowing that the horse was "off" due to an injury; it was Davis who told Tan to jog the horse on the outer track on the school's premises; and it was he who knew, or should have known, of the rocky condition of that track.

We conclude that under the circumstances presented by the summary judgment papers, reasonably construed in appellant's favor, Davis's role as riding instructor to Tan was such that he owed Tan a duty of ordinary care to see to it that the horse he assigned Tan to ride was safe to ride under the conditions he prescribed for that activity. His failure to do so is analogous to

the example, cited in *Knight*, of the duty of the ski resort operator to use due care to maintain its towropes in a safe condition. (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 316.) The responding papers on the motion set up a triable issue of material fact on his breach of the instructor's duty, with resulting danger. Goddard's liability, of course, is on a respondeat superior theory.

As we pointed out at the beginning, the trial court granted the motion for summary judgment on the theory that plaintiff's recovery was barred by the doctrine of implied reasonable assumption of the risk. Since that time, *Knight* and *Ford* have made it clear that that theory is untenable. It follows from that and from the existence of a duty of care in this case that the motion should have been denied.[2]

## DISPOSITION

The judgment is reversed. Appellant is to have his costs on appeal.

Woods (A. M.), P. J., and Stephens, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied May 20, 1993. Panelli, J., was of the opinion that the petition should be granted.

---

[2]We express no opinion on the summary adjudication of issues, on which the trial court ruled before reaching the broader issue of full summary judgment.

*Retired Associate Justice of the Court of Appeal, Second District, Division Five, sitting under assignment by the Chairperson of the Judicial Council.