[No. B050579. Second Dist., Div. Two. June 17, 1993.]

LESLIE GALARDI, Plaintiff and Appellant, v.
SEAHORSE RIDING CLUB et al., Defendants and Respondents.

## COUNSEL

Mix, Sneathern & Brown and Charles D. Sneathern for Plaintiff and Appellant.

Hagenbaugh & Murphy, Katharine Spaniac, Marer, Marer & Schuck, Gerald Z. Marer and John F. Schuck for Defendants and Respondents.

## OPINION

**BOREN, P. J.—**

### BACKGROUND

Plaintiff Leslie Galardi, an accomplished equestrian, sustained personal injuries when she fell from a horse while training for an upcoming horse show. On the theories of general negligence and premises liability, plaintiff sued two defendants, the owner of the stables (Judy Martin doing business as Seahorse Riding Club) and the instructor (Lisa Jacquin). Specifically, the complaint alleged that defendants had "negligently instructed, supervised and controlled plaintiff's activities, including but not limited to, causing plaintiff to jump over fences that were unreasonably and unnecessarily high for the circumstances; said fences being improperly designed, located and spaced, and further advising and counseling plaintiff to jump said improperly designed and placed fences in an improper direction."

The trial court granted defendants' motion for summary judgment, which was based upon the doctrine of assumption of risk. This court affirmed the judgment. (*Galardi* v. *Seahorse Riding Club* (Apr. 18, 1991) B050579 [nonpub. opn.].) Neither the trial court nor this court had the benefit of the Supreme Court's subsequent decision in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]. Plaintiff petitioned the Supreme Court for review, and on November 30, 1992, the Supreme Court transferred the matter to this court "with directions to vacate its decision and to reconsider

the cause in light of Knight v. Jewett (1992) 3 Cal.4th 296." Upon reconsideration, we reverse the judgment.

### FACTS

The record establishes that plaintiff rode a thoroughbred horse, had appeared for several years in horse shows involving performance jumps and obstacles of various types, had on many occasions ridden horses which had either balked at a jump or missed a stride when taking a jump, and had observed more than 50 horse-related injuries and understood that jumping a horse creates a greater risk of injury to the rider than does riding on flat terrain.

On September 9, 1984, at the defendant Seahorse Riding Club, plaintiff was preparing for an upcoming horse show with her horse, Tomboy, owned by her parents and used exclusively by plaintiff. Plaintiff had ridden Tomboy in jumping classes at "A-rated" shows during the prior four years, where, according to plaintiff, the horse "was doing well."

That day, plaintiff was practicing a one-stride jump combination. The combination consists of two individual jumps set up so that the horse takes a stride between each jump. During the practice, defendant Lisa Jacquin, an instructor at the riding club, twice raised the height of the jumps without lengthening the distance between each obstacle. Plaintiff was aware of Jacquin's actions. Jacquin then asked plaintiff to ride through the course in reverse direction.

According to plaintiff's deposition testimony, she recognized the following prior to the jump: "It was twice that [the jumps] had been raised but not lengthened and then [defendant Jacquin] asked me to come through it the other way. That's when I was concerned because I knew that the fences had been raised and that the distance had not been lengthened and that we were also going through it backwards for the first time."

When plaintiff attempted the maneuver, her horse successfully jumped the first obstacle. However, the horse landed too close to the second jump, was unable to take a stride and consequently popped up into the air, knocking down the second jump and causing plaintiff to lose her balance and fall. She sustained injuries to her coccyx and two vertebrae.

### DISCUSSION

Based on undisputed facts, the trial court granted defendants' summary judgment motion grounded upon the doctrine of assumption of risk.

In *Knight* v. *Jewett, supra*, 3 Cal.4th 296, the Supreme Court[1] explained that the doctrine of reasonable assumption of risk had been misinterpreted since the decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] and deemed the doctrine a complete bar to recovery for negligent injury only in those cases involving "primary assumption of risk." (*Knight* v. *Jewett, supra* at pp. 305-308, 314-315.) However, "[i]n cases involving 'secondary assumption of risk' . . . the doctrine is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties." (*Id.* at p. 315.)

The question for us to determine under the undisputed facts here is: Into which category of the California assumption of risk doctrine does the instant case fall? As shall appear, we have concluded that this case involves secondary assumption of risk.

The Supreme Court explained that primary assumption of risk cases are those in which the defendant has no duty to protect the plaintiff from a particular risk. (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 308.) In contrast, in instances of secondary assumption of risk, the defendant does owe a duty of care to the plaintiff and has some liability even though "the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty . . . ." (*Ibid.*)

With respect to an activity or sport which has some inherent risk of injury, whether a defendant owes a duty to a plaintiff is determined by "the nature of the activity or sport in which the defendant is engaged and the *relationship* of the defendant and the plaintiff to that activity or sport." (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 309, italics added.) And, with respect specifically to sports activities, as competitive horse jumping certainly is, a court, in deciding whether summary judgment is warranted, must determine "whether, in light of the nature of the sporting activity in which defendant and plaintiff were engaged, defendant's conduct breached a legal duty of care to plaintiff." (*Id.* at p. 315.)

---

[1]Because Justice Mosk "concur[red] generally" with the analysis of Justice George in the lead opinion (as to which Chief Justice Lucas and Justice Arabian wholly concurred) and concluded along with the lead opinion "that the liability of sports participants should be limited to those cases in which their misconduct falls outside the range of ordinary activity involved in the sport" (*Knight* v. *Jewett, supra*, 3 Cal. 4th 296, 321), we follow the lead opinion as though it were a majority opinion. We note that Justice Mosk "agree[d] that [the] defendant was entitled to summary judgment, for the reasons set forth in part III of the lead opinion" (concerning a sports participant's duty of care and the bar to recovery by the primary assumption of risk doctrine). (*Ibid.*) We note further that Justice Mosk parted company with the lead opinion only because he "would go farther than does the lead opinion," preferred "to eliminate implied assumption of risk entirely," and viewed the doctrine "as anachronistic." (*Ibid.*)

Further concerning sports activities, the Supreme Court stated: "Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 315-316.) As the Supreme Court observed, "the nature of a defendant's duty in the sports context depends heavily on the nature of the sport itself. Additionally, the scope of the legal duty owed by a defendant will also depend on the defendant's role in, or relationship to, the sport." (*Id.* at p. 317.)

The Supreme Court examined a number of cases concerning sports-related injuries and noted that the duties of coparticipants, such as the parties in *Knight* v. *Jewett, supra,* 3 Cal.4th 296, were not necessarily the same as for other persons such as instructors and coaches. (*Id.* at pp. 317-318.) Upon analysis, the Supreme Court concluded that the defendant, a coparticipant with the plaintiff in a rough touch football game had breached no duty owed to the plaintiff and upheld the imposition of summary judgment in favor of the defendant. The court stated that it was generally "improper to hold a sports participant liable to *a coparticipant* for ordinary careless conduct committed during the sport . . . ." (*Id.* at p. 318, italics added.) The court specified that there would be liability to a coparticipant only where the participant-defendant (1) intentionally injured another player or (2) engaged in reckless conduct totally outside the range of ordinary activity involved in the sport. (*Id.* at pp. 318-320.)

 In applying the analytical framework established by the Supreme Court, we must look then both to the *nature* of the sport and to the *roles and relationship* of the parties. Clearly, the sport of horse jumping has the inherent risk that both horse and rider will fall and suffer injury. The basic competitive character of the sport involves engaging increasingly higher jumps and at shorter intervals until at some point the competitors can no longer clear the obstacles without substantial contact. Collisions with the jumps and ensuing falls are thus an integral part of the sport. Riders may also fall from the horse as the result of other conditions such as a balking or stumbling mount. Such risks were clearly among those which plaintiff here knowingly encountered during her training, when the jumps were raised, intervals became more hazardous, and directions were reversed.

However, the occasion of plaintiff's fall and injury was not during competition with other riders. Instead, she had placed her training in the hands of defendants, who were employed to instruct and coach her. Their responsibilities were directly to plaintiff. While other riders, as coparticipants, would

not have any special duty of care to plaintiff during competition to ensure she did not fall, defendants certainly had a duty to avoid an unreasonable risk of injury to plaintiff and to take care that the jumping array was not beyond the capability of horse and rider. Of course, the risk of injury, inherent in plaintiff's activity, cannot be eliminated and in fact creates the challenge which defines the sport. The complaint and evidence presented in the trial court created a question of fact concerning whether defendants, who, we may infer, had knowledge and experience concerning the sport of horse jumping superior to that of plaintiff, negligently deployed the jumps at unsafe heights or intervals and thereby breached the duty owed to plaintiff.

Having determined that defendants had such a duty of care, the breach of which was a possible cause of plaintiff's injury (a matter which ultimately must be decided by the trier of fact), this case necessarily falls into the category of secondary assumption of risk. In such circumstance, it is for the trier of fact to determine the cause of the injury and to apportion the loss resulting from the injury; in so doing it may consider the relative responsibility of the parties. (*Knight* v. *Jewett, supra*, 3 Cal.4th 296, at p. 315.)

A review of other authorities substantiates our conclusion that this case falls into the secondary assumption of the risk category. Although the two cases principally cited by the Supreme Court (*Knight* v. *Jewett, supra*, 3 Cal.4th 296, at p. 318) regarding the duties of coaches and instructors are not directly on point,[2] a recent decision of Division Four of this court is. In *Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528 [17 Cal.Rptr.2d 89], the court held that although coparticipants in a sport ordinarily owe no duty to each other, "the general rule is that coaches and instructors owe a duty of due care to persons in their charge." (*Id.* at p. 1535.) In *Tan*, a student horse jockey fell from a horse during training and sued the horse racing school, the owner of the school and his coach. The injured jockey complained that he had been given an unsuitable horse to ride, that he had not received sufficient instruction and that the condition of the track was unsafe. (*Id.* at pp. 1530-1531, 1535.)

Upon review of the authorities relied upon in *Tan* and of case law in other jurisdictions (e.g., *Benitez* v. *New York City Bd. of Educ.* (1989) 73 N.Y.2d 650 [543 N.Y.S.2d. 29, 541 N.E.2d. 29]; *Kirk* v. *Washington State University*

---

[2]*Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399 [239 Cal.Rptr. 916] involved a question of the application to the heirs of a decedent's waiver of the defendant's liability for negligent injury in a scuba diving class. And, in *Morris* v. *Union High School Dist.* (1931) 160 Wash. 121 [294 P. 998], no discussion of the assumption of risk doctrine was involved; instead, the case presents a question of pleading concerning governmental immunity where an injured football player was exposed to the risk of injury aggravation.

(1987) 109 Wn.2d 448 [746 P.2d 285], cited in *Knight* v. *Jewett, supra*, 3 Cal.4th 296, at p. 314), we have concluded that *Tan* was correctly decided and agree that the general rule is that coaches and instructors owe a duty of care to their charges. Thus, a complaint raising the issue of coach or instructor negligence during training involves secondary assumption of risk, which is not a complete bar to recovery and permits a trier of fact to consider comparative fault principles and the relative responsibilities of the parties and to apportion the loss resulting from plaintiff's injury.

Hence, the motion for summary judgment should have been denied.

### Disposition

The judgment is reversed. Appellant is to have her costs on appeal.

Fukuto, J., and Nott, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 15, 1993. Panelli, J., was of the opinion that the petition should be granted.