[No. C027041. Third Dist. Dec. 21, 1998.]

JOSHUA R. LILLEY, a Minor, etc., Plaintiff and Appellant, v.
ELK GROVE UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Donald E. Wharton for Plaintiff and Appellant.

Anwyl, Scoffield, Stepp & Universal and Jon D. Universal for Defendants and Respondents.

## OPINION

**SCOTLAND, J.**—Joshua R. Lilley (plaintiff) filed this negligence action against Elk Grove Unified School District and Brandon Matsumoto, the wrestling coach at Joseph Kerr Middle School, seeking to recover damages for a broken arm plaintiff suffered while participating in wrestling as an extracurricular school activity. The trial court held that primary assumption of the risk was a complete defense to the cause of action and granted defendant's motion for summary judgment. Plaintiff appeals from the ensuring judgment entered in favor of defendants.

This appeal is noteworthy because plaintiff contends that Education Code section 44807 eliminates primary assumption of the risk as a defense to a negligence action brought by an elementary or secondary school student who is injured while engaging in any extracurricular sporting activity offered by a school.

We disagree. As we shall explain in the published part of this opinion, Education Code section 44807, which imposes upon teachers a general duty to supervise students, does not evince an intent to modify common law assumption of the risk principles. Moreover, the imposition of a duty to protect student athletes from risks inherent in the extracurricular sport of wrestling is not appropriate because it would fundamentally alter the nature of the sport and could result in schools deciding to eliminate the beneficial educational activity of school sports. Therefore, we decline to construe the

statute to foreclose application of the primary assumption of risk doctrine to risks inherent in any school sports.

In the unpublished portions of this opinion, we reject plaintiff's remaining contentions. Accordingly, we shall affirm the judgment.

## FACTS

At the time of his injury, plaintiff was a 14-year-old student at the Joseph Kerr Middle School. He desired to participate in an after-school wrestling program. His father thought it would be good for plaintiff, and signed a parental permission slip.

During the second day of practice, the participants were divided into groups according to size. Plaintiff, who weighed 230 pounds, was placed in the heavyweight section. The groups then went from station to station to participate in particular activities. At some stations the participants engaged in strength and conditioning exercises. At one station the groups spent 17 minutes with Matsumoto while he gave them a brief introduction to actual wrestling.

During his demonstration, Matsumoto intended to show the participants that wrestling is not what they may have seen on television, but is a sport of control. He demonstrated a certain control hold, and showed them a way of blocking an opponent from obtaining the hold. He then had the participants pair off and step through the maneuvers in slow motion. He did not want the participants in combative situations with each other at that time, so he went from the lightest to the heaviest student, taking each of them onto the mat with him. He gave each student about 15 seconds to attempt to escape from his application of the control hold.

Plaintiff's turn on the mat came near the end of the heavyweight group. During a few seconds of grappling with Matsumoto, plaintiff reached his right hand to the mat to brace himself and broke the bones in his forearm. Treatment required an operation to clean the wound and to install plates and screws to stabilize the bones.

## DISCUSSION

■ *Cheong* v. *Antablin* (1997) 16 Cal.4th 1063 [68 Cal.Rptr.2d 859, 946 P.2d 817] reiterates the basic principles of primary assumption of the risk articulated by the California Supreme Court in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] when it held that assumption of

risk barred an action by a participant in a touch football game to recover damages for an injury caused by the allegedly rough play of another participant in the game. (*Knight* v. *Jewett, supra,* at p. 321.)

Primary assumption of risk focuses on the legal question of duty. (*Cheong* v. *Antablin, supra,* 16 Cal.4th at pp. 1067-1068.) It does not depend upon a plaintiff's implied consent to injury, nor is the plaintiff's subjective awareness or expectation relevant. (*Id.,* at p. 1068; *Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 312-313.) Rather, the issue turns on the nature of the activity in which the defendant is involved and the relationship of the parties to that activity. (*Cheong* v. *Antablin, supra,* at p. 1068.) The ultimate question is whether, in light of the nature of the activity and the parties' relationship to the activity, the defendant had a duty to protect the plaintiff from the particular harm that caused the injury. (*Ibid.*) This is a legal issue to be decided by the court, rather than by a jury. (*Knight* v. *Jewett, supra,* at p. 313.)

In a sports setting, a condition or conduct that creates a risk of injury may be an integral part of the sport itself. (*Cheong* v. *Antablin, supra,* 16 Cal.4th at p. 1068.) The risks inherent in a sport may include the careless conduct of others. (*Ibid.*) Imposition of legal liability for ordinary careless conduct could chill vigorous participation and fundamentally alter the nature of the sport itself. (*Ibid.; Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 318-319.) Accordingly, a participant does not have a legal duty to protect another participant from the risks which are inherent in the sport. A coparticipant may be held liable only for intentional injuries or for conduct that is so reckless as to be totally outside the range of ordinary activity involved in the sport. (*Cheong* v. *Antablin, supra,* at p. 1068; *Knight* v. *Jewett, supra,* at p. 320.)

 Based upon the nature of the specific activity resulting in plaintiff's injury and the parties' relationship to that activity, the injury falls squarely within the doctrine of primary assumption of the risk. Wrestling is a sport involving two persons who grab, twist, throw or otherwise exert forces and holds upon each other's heads, necks, arms, legs, feet and torsos, with the object of forcing the opponent to the mat and pinning him in what usually is an awkward position. All the while, they strain their bodies in order to extract themselves from precarious positions. The type of injury plaintiff suffered while participating in the demonstration of a common wrestling technique is an inherent risk of wrestling.

Under the circumstances of this case, the fact that Matsumoto was an instructor and plaintiff was his student does not preclude application of

primary assumption of risk to the injury plaintiff suffered during practice. (*Allan* v. *Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1368-1369 [59 Cal.Rptr.2d 813] [". . . the mere existence of an instructor/pupil relationship does not necessarily preclude application of 'primary assumption of the risk.' Learning any sport inevitably involves attempting new skills. A coach or instructor will often urge the student to go beyond what the student has already mastered; that is the nature of (inherent in) sports instruction."]; *Staten* v. *Superior Court* (1996) 45 Cal.App.4th 1628, 1633, fn. 4 [53 Cal.Rptr.2d 657] ["Like rehearsals in drama, practice is essential to competitive athletic activity. One assumes the risks inherent in an active sporting activity by participating in it, regardless of whether the participation is practice or formal competition."].)

As explained in *Bushnell* v. *Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525 [50 Cal.Rptr.2d 671], which held that primary assumption of the risk was applicable to a judo student who broke his leg while practicing a maneuver with his instructor: "Instruction in an activity such as judo necessarily requires pushing a student to move more quickly, attempt a new move, or take some other action that the student previously may not have attempted. That an instructor might ask a student to do more than the student can manage is an inherent risk of the activity. Absent evidence of recklessness, or other risk-increasing conduct, liability should not be imposed simply because an instructor asked the student to take action beyond what, with hindsight, is found to have been the student's abilities. To hold otherwise would discourage instructors from requiring students to stretch, and thus to learn, and would have a generally deleterious effect on the sport as a whole." (*Id.*, at p. 532; see also *Fortier* v. *Los Rios Community College Dist.* (1996) 45 Cal.App.4th 430, 436-437 [52 Cal.Rptr.2d 812]; cf. *Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528, 1534-1535 [17 Cal.Rptr.2d 89]; *Wattenbarger* v. *Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746, 753-754 [33 Cal.Rptr.2d 732]; *Galardi* v. *Seahorse Riding Club* (1993) 16 Cal.App.4th 817, 822-823 [20 Cal.Rptr.2d 270].)

Faced with the realization that the doctrine of primary assumption of the risk bars his recovery, plaintiff tenders three theories that he believes preclude application of the doctrine to this case. We consider them seriatim.

I

According to plaintiff, Education Code section 44807 (section 44807) eliminates primary assumption of the risk as a defense to his action.

Section 44807 provides in pertinent part: "Every teacher in the public schools shall hold pupils to a strict account for their conduct on the way to

and from school, on the playgrounds, or during recess. A teacher, vice principal, principal, or any other certificated employee of a school district, shall not be subject to criminal prosecution or criminal penalties for the exercise, during the performance of his duties, of the same degree of physical control over a pupil that a parent would be legally privileged to exercise but which in no event shall exceed the amount of physical control reasonably necessary to maintain order, protect property, or protect the health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning. . . ." (Stats. 1976, ch. 1010, § 2, p. 3410.)

In plaintiff's view, section 44807 is a statutorily imposed duty of supervision, placed upon teachers in order to protect schoolchildren, that supersedes the doctrine of primary assumption of the risk in the school sports setting because the statute imposes the duty of care which otherwise does not exist under the doctrine. He argues that, "[a]bsent further statutory enactment designed to limit the duty of our public schools to our children, the doctrine of primary assumption of the risk in relation to supervision of minor school children must stop at the school door." We are unpersuaded.

Section 44807 imposes on school authorities a general duty to supervise pupils on school property during school hours in order to " 'regulate their conduct so as to prevent disorderly and dangerous practices which are likely to result in physical injury to immature scholars under their custody.' " (*Rodrigues* v. *San Jose Unified School Dist.* (1958) 157 Cal.App.2d 842, 846 [322 P.2d 70], quoting *Forgnone* v. *Salvador U. E. Sch. Dist.* (1940) 41 Cal.App.2d 423, 426 [106 P.2d 932] [construing predecessor statute]; accord, *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360].)

The statute "does not make school districts insurers of the safety of pupils at play or elsewhere" (*Rodrigues* v. *San Jose Unified School Dist., supra*, 157 Cal.App.2d at p. 845), and, by its terms, section 44807 does not purport to impose a duty on teachers to insure students against the risks of injury inherent in the participation in extracurricular school sports.

If the Legislature wanted to do so, it would be a simple, linguistic task to abrogate primary assumption of the risk with respect to school children engaged in extracurricular sports activities. The Legislature has not chosen to do so expressly. Nevertheless, plaintiff would have this court reach that result through extension of the general duty of supervision set forth in section 44807.

We decline to construe the general duty of supervision embodied in section 44807 to foreclose application of the primary assumption of the risk

doctrine to those risks inherent in school sports. Nothing in the statute evinces an intent to modify common law assumption of the risk principles. (Cf. *Cheong* v. *Antablin, supra,* 16 Cal.4th at pp. 1069-1070.) Moreover, the policy factors governing primary assumption of the risk in a general sports setting apply equally to students participating in extracurricular school sports. (Cf. *Balthazor* v. *Little League Baseball, Inc.* (1998) 62 Cal.App.4th 47, 51-52 [72 Cal.Rptr.2d 337]; *Allan* v. *Snow Summit, Inc., supra,* 51 Cal.App.4th at pp. 1368-1369; *Fortier* v. *Los Rios Community College Dist., supra,* 45 Cal.App.4th at pp. 436-437; *Bushnell* v. *Japanese-American Religious & Cultural Center, supra,* 43 Cal.App.4th at p. 532.) Imposition of a duty to protect student athletes from any risk inherent in a sport like wrestling would fundamentally alter the nature of the sport and, in some instances, effectively preclude participation altogether because the threat of liability would make schools reluctant to offer sports as an extracurricular activity. (*Fortier* v. *Los Rios Community College Dist., supra,* at p. 439.) Such a result would have a significant social ramification.

For many, sports are part of the school learning experience, among other things teaching students how to deal properly with both success and failure, and instilling in them an understanding of the importance of teamwork, good sportsmanship, discipline, and respect for coaches, teammates and opposing players. Another important part of the experience is that students and their parents learn about accepting responsibility for the consequences of one's choices and actions. By choosing to participate in a sport that poses the obvious possibility of injury, the student athlete must learn to accept an adverse result of the risks inherent in the sport.

In other words, application of the doctrine of primary assumption of the risk in the extracurricular school sports setting is consistent with, rather than inimical to, the goals and responsibilities of elementary and secondary schools.

Accordingly, section 44807 does not preclude application of primary assumption of the risk to injuries suffered by a student while participating in extracurricular school sports.[1]

---

[1]Plaintiff also cites California Code of Regulations, title 5, section 5552, which provides: "Where playground supervision is not otherwise provided, the principal of each school shall provide for the supervision by certificated employees of the conduct and safety, and for the direction of play, of the pupils of the school who are on the school grounds during recess and other intermissions and before and after school." However, by its terms, this regulation does not apply because plaintiff's injury occurred while he was participating in wrestling as an organized and supervised extracurricular activity, and not during unsupervised play on school grounds. In any event, as we have explained in the body of our opinion, such a general duty

The following authorities relied upon by plaintiff do not compel a contrary conclusion.

*Iverson* v. *Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218 [38 Cal.Rptr.2d 35] held that a school district is not immune from liability for injuries sustained by a student during a compulsory physical education class. However, the court addressed only the public entity immunity statute. (Gov. Code, § 831.7.) The case did not involve or discuss application of primary assumption of the risk to a student injured while participating in a noncompulsory extracurricular sports activity. Cases are not authority for issues not considered.

*Lucas* v. *Fresno Unified School Dist.* (1993) 14 Cal.App.4th 866 [18 Cal.Rptr.2d 79] rejected the application of primary assumption of the risk to a 10-year-old student who was injured in a dirt clod fight during a school recess. The decision is inapposite to this case. It is enough to note that plaintiff's participation in the extracurricular sport of wrestling clearly is within the policy purview of primary assumption of the risk, whereas a young child's participation in an unsupervised dirt clod fight clearly is not.

*Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392 [14 Cal.Rptr.2d 679] held that the owner of a dog which bit a woman who tried to save the dog after it was struck by a car while running loose could be liable pursuant to Civil Code section 3342 and that assumption of the risk did not apply. The decision is inapposite because, unlike in the present case, neither the nature of the activity nor the relationship of the parties to that activity satisfies the policy considerations of primary assumption of the risk that negate a duty of care.

On the facts of this case, the trial court correctly determined that primary assumption of the risk was a complete defense to plaintiff's cause of action and properly granted the motion for summary judgment in favor of defendants.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . .

---

of supervision as set forth in this regulation does not preclude the application of primary assumption of the risk to injuries suffered by a student while participating in extracurricular school sports.

*See footnote, *ante*, page 939.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Callahan, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 17, 1999.