[No. F034825. Fifth Dist. Sept. 28, 2001.]

ROBERT MASTRO, Plaintiff and Appellant, v.
STEVE PETRICK, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with exception of that portion under the heading "Was Petrick Snowboarding Recklessly?"

**COUNSEL**

Law Offices of Wagner & Jones and Nicholas Wagner for Plaintiff and Appellant.

Nagel & Nagel and John T. Nagel for Defendant and Respondent.

**OPINION**

**ARDAIZ, P. J.**—This case involves the tort liability of a snowboarder who collided with a skier while both were descending a snow-covered mountainside (hereafter slope). The parties present two issues on appeal. First, are snowboarders and skiers using the same slope "coparticipants" in a sporting activity such that the doctrine of primary assumption of risk applies to bar appellant's recovery? Second, if primary assumption of risk does apply, was respondent's conduct "so reckless as to be totally outside the range of the ordinary activity involved in the sport" and therefore make summary judgment improper? (*Knight v. Jewett* (1992) 3 Cal.4th 296, 320 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*).) We frame the assumption of risk issue slightly differently than presented by the parties, and conclude that under the doctrine of primary assumption of the risk a snowboarder owes no duty of care to a skier on the same slope and that, in this case, the evidence established that respondent's conduct was not reckless.

FACTS AND PROCEDURAL HISTORY

On March 6, 1998, appellant Robert Mastro and respondent Steve Petrick were at Sierra Summit Ski Resort to ski and snowboard, respectively. Both were descending a slope called "Boulder Alley" when Petrick, the snowboarder, collided into Mastro, the skier. Petrick had snowboarded down the slope at approximately 30 to 35 miles per hour and did not see Mastro until immediately before colliding with him. Mastro suffered a severe knee injury as a result of the collision.

On March 3, 1999, Mastro filed a complaint against Petrick alleging general negligence and recklessness. Mastro's complaint alleged, in pertinent part: "That at all times herein mentioned, the defendants, and each of

them, including defendant, STEVE PETRICK, negligently, carelessly, and recklessly operated and controlled their snowboard while snowboarding near and around the general vicinity of plaintiff, ROBERT MASTRO."

Petrick answered the complaint on June 16, 1999, asserted the defense of assumption of risk, and filed a motion for summary judgment on October 8, 1999. Petrick contended in his motion that under the doctrine of assumption of risk he owed no duty of care to Mastro so long as his conduct was not reckless. Petrick further contended that his conduct was not reckless and therefore was not outside the range of ordinary activity involved in the sport of snow skiing or snowboarding. Mastro timely opposed the motion, arguing that Mastro and Petrick were not coparticipants in the same sport and therefore the doctrine of primary assumption of risk should not apply to bar Mastro's claim (i.e., Petrick did owe Mastro a duty of care). Mastro further argued that even if they were coparticipants (and therefore no duty of care was owed), Petrick's conduct was reckless, thereby precluding summary judgment. After announcing its tentative decision to grant Petrick's motion for summary judgment, the trial court heard argument on the motion on November 10, 1999. The court filed its decision on December 2, 1999, granting the motion. Judgment was entered against Mastro on December 13, 1999, and Mastro timely appeals.

DISCUSSION

*Standard of Review*

■ A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A court may grant summary judgment only when the evidence in support of the moving party establishes that there is no issue of fact to be tried." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 547 [34 Cal.Rptr.2d 630, 882 P.2d 347].) An appellate court reviewing a trial court's granting of summary judgment will make a de novo determination of whether there is a triable issue of fact and whether the moving party is entitled to judgment as a matter of law. (*Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1515 [285 Cal.Rptr. 385].) In conducting our independent review of a grant of summary judgment, we apply the same analysis as the trial court. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which

negate opponents claim and justify a judgment in movant's favor . . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Id.* at pp. 1064-1065; accord, see *Zuckerman v. Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1400-1401 [232 Cal.Rptr. 458].) Subdivision (o)(2) of Code of Civil Procedure section 437c states in relevant part: "(o) For purposes of motions for summary judgment and summary adjudication: [¶] . . . [¶] (2) A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff or cross-complainant cannot rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." This court has previously explained the meaning of subdivision (o)(2) as follows: "[W]e conclude that a moving defendant now has two means by which to shift the burden of proof under subdivision (o)(2) of section 437c to the plaintiff to produce evidence creating a triable issue of fact. The defendant may rely upon factually insufficient discovery responses by the plaintiff to show that the plaintiff cannot establish an essential element of the cause of action sued upon. [Citation.] Alternatively, the defendant may utilize the tried and true technique of negating ('disproving') an essential element of the plaintiff's cause of action. [Citation.]" (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1598 [50 Cal.Rptr.2d 431], fn. omitted.) As the moving party Petrick bore the burden of either affirmatively negating an element of the cause of action or pointing to an absence of evidence. Petrick's motion raised both an issue of law (duty), and sought to affirmatively disprove that he acted recklessly. For the reasons set forth below, we agree with Petrick on both issues and affirm the grant of summary judgment.

*Did Petrick Owe Mastro a Duty of Care?*

To sort through the tort law at issue in this case we begin by stating the basic rule that we all generally have the duty to use due care to avoid injuring others. (Civ. Code, § 1714, subd. (a).) Our Supreme Court attempted to clarify this general rule as applied in the sports context in *Knight*, concluding that the doctrine of assumption of risk properly bars a plaintiff's claim when it can be established that the defendant owed the plaintiff no

duty of care. (*Knight, supra,* 3 Cal.4th at pp. 313, 314-315.) "[T]he existence and scope of a defendant's duty of care is a *legal* question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury."[1] (*Knight, supra,* at p. 313.) Thus, when the injury occurs in a sports setting the court must decide whether the nature of the sport and the relationship of the defendant and the plaintiff to the sport—as coparticipant, coach, premises owner or spectator—support the legal conclusion of duty. (*Id.* at pp. 309, 317.) And where a court concludes no duty exists, our Supreme Court has labeled this lack of duty as the doctrine of "primary assumption of risk." (See *Knight, supra,* 3 Cal.4th at p. 308 [defining primary assumption of risk as "those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk"].) In other words, because of the relationship of defendant and plaintiff to the sport the defendant is engaged in, the plaintiff assumes the risk of injury by a defendant who does not owe the plaintiff the general duty of due care.

In this case, the parties agree that coparticipants in a sporting activity only breach a legal duty of care to other participants where they intentionally injure or engage in "conduct that is so reckless as to be totally outside the range of ordinary activity involved in the sport." (*Knight, supra,* 3 Cal.4th at p. 320.) Mastro argued below and on appeal that he and Petrick were not coparticipants in the same sport, and he therefore reasons the *Knight* rule of nonliability for coparticipants in a sporting activity does not apply. He contends that snowboarding and skiing are sufficiently different activities that, even though they may take place on the same slope, they are not the same "sport" within the meaning of the assumption of risk doctrine. Petrick naturally disagrees, arguing that the trial court was correct in concluding that both parties were engaged in the "general sport of snow riding or skiing" and Petrick owed no duty of care to Mastro because Mastro "chose to snow ski at a resort that offers the whole mountain to snow skiers and snow boarders."

We do not agree with the parties that this case turns on whether or not Mastro and Petrick are labeled as "coparticipants" in the same sport. To resolve this issue in the manner presented by the parties would lead to one of two illogical and baseless results, and would ignore the analysis required by

---

[1]Appellant makes an extended argument applying the eight-part test from *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], superseded by statute as stated in *Perez v. Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 462, 467 [267 Cal.Rptr. 100] (generally we all owe a duty of care to act reasonably). We do not engage in this analysis because *Knight* is an exception to applicability of the *Rowland* analysis. (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 116 [96 Cal.Rptr.2d 394] [explaining *Knight* is an exception to the general rule of *Rowland v. Christian*].)

*Knight*. As the parties frame the issue, we would either have to factually conclude that the two activities (involving different equipment, goals, competitions and maneuvers) were the same "sport"; or, we would have to conclude they are different sports and therefore (so Mastro's argument necessarily concludes), a snowboarder owes a duty of care to skiers he might encounter on a slope where both skiers and snowboarders are allowed but owes no duty of care to other snowboarders he might encounter on a slope. We are not inclined to slide down either of these slippery slopes, and need not do so to resolve the essential issue here: Did Petrick owe Mastro a duty of care?

We find that Petrick owed no duty of care to a nonsnowboarder occupying an area properly utilized by snowboarders. Whether or not Mastro and Petrick were engaged in the *same* general activity or sport is not the relevant question under the *Knight* analysis. This is made clear by the *Knight* court's self-described "duty approach to the doctrine of assumption of risk." (*Knight, supra,* 3 Cal.4th at p. 313.) Under the duty approach, a defendant's participation in a sport does not merely preclude liability as to other "coparticipants," but rather his duty to others is determined by "the nature of the sport or activity in question and on the *parties' general relationship to the activity.*"[2] (*Knight, supra,* at p. 313, italics added; see also *Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at p. 541 ["We . . . keep in mind . . . the nature of the defendant's activities and the relationship of the plaintiffs and the defendant to that activity to decide whether, as a matter of public policy, the defendant should owe the plaintiffs a duty of care."].) In other words, there is nothing in *Knight* that leads to the conclusion that assumption of risk will *only* apply to coparticipants. (See *Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1368-1372 [59 Cal.Rptr.2d 813] [pointing out that *Knight* analysis is more complex than summarily concluding that " 'primary assumption of the risk' applies only and always when (i.e., because) the defendant is a *coparticipant* in a sports activity"].) Thus, the question of whether Petrick owed Mastro a duty of care does not necessarily turn on

---

[2]In *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 462 [63 Cal.Rptr.2d 291, 936 P.2d 70], the court stated: "In this case, in which defendant had no participatory involvement in the activity undertaken by plaintiff, the decision in *Knight* does not define whatever duty was owed by defendant to plaintiff." *Parsons* involved the liability of a garbage company for its trucks' frightening the plaintiff's horse. There the *defendant* had no relationship whatsoever to the sporting activity, and therefore removed the situation from *Knight*'s duty-based analysis that focused on the sporting defendant's duty of care. Thus, the *Parsons* court's recognition that the *Knight* analysis focused on "parties who have some organized relationship with each other and to a sporting activity" (*Parsons v. Crown Disposal Co., supra,* 15 Cal.4th at p. 481) was simply restating the analysis we focus on here: examining the nature of the activity and the parties relationship to the activity. There is no question that snowboarders and skiers properly occupying the same ski slope "have some organized relationship with each other."

whether or not snowboarding and skiing are the same "sport" (a question which, though the author may have a strong personal opinion about, need not be decided here), but instead depends more generally on the parties' relationship to the activity Petrick (as the defendant) was engaged in. In other words, Petrick's duty of care to persons in his sporting venue depends on the risks inherent in his sport.[3]

Accordingly, given the nature of the activity of snowboarding (descending a snow-covered mountain), and the relationship of Mastro to that activity (descending the same snow-covered mountain on skis), under *Knight* it is clear Petrick owed no legal duty to protect Mastro from the particular risk of harm that caused Mastro's injuries (i.e., that a snowboarder may be negligent or careless).[4] Put more generally, one who is pursuing his sport in an appropriate venue owes no duty of care to those who choose to occupy the same venue to engage in their (possibly different) activity simultaneously. Thus, to the extent Mastro is "assuming a risk," the risk he is assuming is that he is occupying a venue with others that owe him no duty of care.

The appropriateness of this analysis is made clear by a case relied on in *Knight*, *Ratcliff v. San Diego Baseball Club* (1938) 27 Cal.App.2d 733 [81 P.2d 625] (*Ratcliff*). In *Ratcliff* a spectator walking in the stands was injured by an accidentally thrown bat. She sued both the player who threw the bat and the baseball stadium owner. The Court of Appeal affirmed a jury verdict

---

[3]The parties debate the applicability of the Third District Court of Appeal's decision in *Campbell v. Derylo* (1999) 75 Cal.App.4th 823 [89 Cal.Rptr.2d 519] (*Campbell*), wherein the court quickly dismissed the notion that skiers and snowboarders were *not* coparticipants for purposes of assumption of risk. The court stated: "We quickly dismiss plaintiff's contention that there is a triable issue over whether plaintiff and defendant were coparticipants. At Heavenly Valley Ski Resort, skiers and snowboarders share the same slope. Both parties were in a designated ski area; moreover, putting on and taking off equipment is an integral part of the sport. Skiing, like ice skating, is a sport which may be engaged in just as well alone as with others. There is no requirement that athletes be acquainted with each other or join together in order to be considered coparticipants within the meaning of *Knight*. (See *Staten* v. *Superior Court* [(1996) 45 Cal.App.4th 1628,] 1633 [53 Cal.Rptr.2d 657] [figure skater assumes risk of collision with other skaters even when skating solo, where 'proximity to one another created certain risks of collision'].)" (*Id.* at p. 827, fn. 1.)

The *Campbell* court implicitly recognized that, whether or not engaged in the same sport, both parties were in a designated ski area and that one owed no duty to the other to avoid mere negligent or careless conduct. Our conclusion is no different. We simply do not rest it on the assumption that the parties need to be labeled coparticipants to reach this result.

[4]The relationship of the parties to the activity and how that affects the duty of care will vary greatly depending on the facts of any given case. For example, a situation where the plaintiff's relationship to the activity is as a student and the defendant's is as a coach may lead to a different result. (See, e.g., *Tan v. Goddard* (1993) 13 Cal.App.4th 1528, 1534-1536 [17 Cal.Rptr.2d 89] [using *Knight*'s "relationship to activity" analysis to conclude jockey instructor owes duty to student]; *Galardi v. Seahorse Riding Club* (1993) 16 Cal.App.4th 817, 822 [20 Cal.Rptr.2d 270] [also relying on *Knight* and stating "we must look then both to the *nature* of the sport and to the *roles and relationship* of the parties" to conclude instructor owed duty of care to plaintiff student].)

finding in favor of the player and against the stadium owner. The *Knight* court accepted the *Ratcliff* court's implicit reasoning: "that two different potential duties were at issue—(1) the duty of the ballplayer to play the game without carelessly throwing his bat, and (2) the duty of the stadium owner to provide a reasonably safe stadium with regard to a relatively common (but particularly dangerous) hazard of a thrown bat." (*Knight, supra,* 3 Cal.4th at p. 317.) Clearly, the spectator was not a coparticipant in the baseball game. Nevertheless, the *Knight* court accepted the assumption that the relationship of the plaintiff (being a spectator) to the activity was not a relationship that should create a duty of care on the part of the ballplayer. Rather, the ballplayer was performing his sport in a place properly designated for it, and should not be restrained from vigorously engaging in his sport. Similarly, Petrick should not be restrained or inhibited from vigorously engaging in his sport (snowboarding) because of the presence of skiers on the same slope.

Finally, as set forth more fully below, we note that we do not dispute Mastro's contention that Petrick had a duty of care not to "increase the risks to a participant over and above those inherent in the sport." (*Knight, supra,* 3 Cal.4th at p. 316.) Mastro defines "the sport" however, as skiing, and therefore concludes that because snowboarding involves different risks than skiing, a snowboarder's mere presence on a slope utilized by skiers increases the risks to skiers over and above those risks inherent in the sport of skiing. We do not doubt this may be true. Nevertheless, as explained above, to the extent Petrick is engaged in his sport of snowboarding in an area designated for snowboarding, the doctrine of assumption of risk protects him from claims of negligence unless he creates a risk over and above those risks inherent in the sport of *snowboarding.* Thus, even if Mastro is correct that the nature of the sport of snowboarding increases the risk of harm to skiers on the same slope, the *snowboarder's* duty is unaltered by this fact because the nature of a defendant's duty is defined by the activity he engages in.[5]

*Was Petrick's Conduct Reckless?*

As stated previously, where assumption of risk applies, those engaged in a sport or recreational activity have only a legal duty not to "engage in conduct that is so reckless as to be totally outside the range of ordinary activity involved in the sport." (*Knight, supra,* 3 Cal.4th at p. 320.) The record shows that Mastro did not argue in the summary judgment proceedings (nor does he argue on appeal) that Petrick intentionally injured him. The

---

[5]Again, this is presuming the parties' relationship to the activity does not, as a matter of public policy, mandate a different result. That is not the case, where, as here, the plaintiff skis where others are properly allowed to snowboard.

question we must decide, then, was whether Petrick's summary judgment motion established that his conduct on the slope was not reckless.

On appeal, Mastro takes two approaches to challenging Petrick's evidence that he was not reckless. First, he largely ignores the evidence below and argues that snowboarding is, essentially, as a matter of law reckless and therefore a question of fact exists regarding Petrick's liability. Second, without citation to the record, he contends Petrick's "clear violation of [Mastro's] right of way and at least two safety rules governing Petrick's activity . . . in conjunction with the snowboarding stance" increased the risks inherent in the sport of skiing. We deal with each of these arguments in turn.

*Snowboarding Is Not "Inherently Reckless"*

Mastro argues that engaging in the sport of snowboarding where others may be skiing is reckless because a snowboarder descends the hill "in such a way that he could not see other participants whose paths below might intersect his." He claims that "[t]he stance used by snowboarders creates a blind spot and a snowboarder who does not turn so that he sees into the blind spot is engaged in an activity which increases the risk of harm inherent to those skiing nearby."

We reject this "snowboarding is inherently reckless" argument. Petrick is entitled to engage in his sport in an area designated for his sport and, under *Knight,* is entitled to the protection of the doctrine of assumption of risk. Thus, the proper question is whether Petrick adequately established that Mastro could present no evidence of other things Petrick may have been doing (i.e., risks not inherent to snowboarding) that increased the risk of harm to Mastro. In other words, even assuming that an inherent risk to snowboarding is that snowboarders may have more limited vision than skiers when descending a hill, the proper question is not "is snowboarding reckless?" but instead, "was Petrick snowboarding recklessly?"

*Was Petrick Snowboarding Recklessly?**

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 83.

## DISPOSITION

The judgment is affirmed. Costs to respondent.

Levy, J., and Wieland, J.,* concurred.

On October 23, 2001, the opinion was modified to read as printed above.

---

*Judge of the Madera Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.