[No. A069831. First Dist., Div. One. Jan. 10, 1996.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; JOANNA ROETTGEN, Real Party in Interest.

**COUNSEL**

Ropers, Majeski, Kohn & Bentley, James A. Lassart, Gail Y. Norton and Adrian G. Driscoll for Petitioner.

Gagen, McCoy, McMahon & Armstong, William E. Gagen, Jr., Richard C. Raines and Barbara Duval Jewell for Real Party in Interest.

**OPINION**

**STEIN, J.**—The Regents of the University of California (the Regents) seek a writ of mandate (Code Civ. Proc., § 437c, subd.(*l*)),[1] challenging the denial of its motion for summary judgment. It is the defendant in a wrongful death action brought by the widow of Norman Roettgen who was killed during a rock climbing class sponsored by the Regents.[2] The complaint alleged that Mr. Roettgen's fall was the result of defendant's instructors' negligence in placing four rope anchors into a single crack system resulting in the release of the line holding Mr. Roettgen. The Regents moved for summary judgment on the ground that the action was barred by the affirmative defenses of express assumption of risk and primary assumption of risk. Respondent superior court denied the motion, finding triable issues of material fact concerning whether Mr. Roettgen had expressly assumed the risk. As to the

---

[1] Unless noted, further statutory references are to the Code of Civil Procedure.

[2] The suit originally named 12 defendants including individual class instructors and the 4 sponsoring agencies (the Regents, the University of California San Francisco, Outdoors Unlimited, and Millberry Programs and Services). Pursuant to a stipulation, the individual instructors were dismissed with prejudice and the sponsoring entities deemed one, the Regents.

defense of primary assumption of risk, the superior court held that the Regents, as an instructor, owed Mr. Roettgen a duty of care as a matter of law.

We hold that the action was barred by the doctrine of primary assumption of risk. (*Knight* v. *Jewett* (1992) 3 Cal.4th 296, 308 [11 Cal.Rptr.2d 2, 834 P.2d 696]; *Ferrari* v. *Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 256 [38 Cal.Rptr.2d 65]). Accordingly, we issue our peremptory writ.[3]

FACTS

Prior to his fatal accident, Mr. Roettgen had participated in several rock climbing classes organized and sponsored by the Regents: An Introduction to Climbing (May 22-23, 1993); Advanced Beginners (June 5-6, 1993) and Instructor's Training (June 1993). He had previously participated in "top roping," "belaying," and the setting of "top rope anchors." He died during an intermediate rock climbing course, the purpose of which was to give climbers the experience of placing pieces of climbing equipment ("protection") in the rock face of a mountain as they climbed. While carrying out this exercise the students, including Mr. Roettgen, were attached to a "belay line" which itself passed through a "top rope anchor system," with the other end of the line held by a person on the ground.

Two top rope anchor systems were set up for the exercise the morning of the accident. One was set up by instructor Robert Gould, assisted by Mr. Roettgen, who was qualified as an "assistant instructor" and had trained in setting top rope anchors. The second was set up by Ian McGowan and Connie Veilleux, who were designated instructor and assistant instructor, respectively, on the trip. Top rope anchor systems are considered safe if the anchors within each system are themselves set in two or more separate crack systems in a mountain face. Each of the anchor systems set that day appeared to have been properly installed with anchors in independent crack features, until that set by McGowan and Veilleux failed as Mr. Roettgen was belaying down the mountainside after completing the "placing protection" portion of the morning exercise. The four anchors installed by McGowan and Veilleux apparently had actually been installed in one rock crack system. The anchor devices let loose releasing the rope when a large piece of the mountain face shifted; Norman Roettgen fell over 90 feet to his death.

---

[3]The Regents fail in their challenge to the ruling that there were triable issues of material fact concerning the defense of express assumption of risk. (§ 437c, subd. (c).)

McGowan and Veilleux each had significant experience setting anchors and they believed their system was "bombproof." Other than the anchor failure, no evidence was presented to suggest that this was a faulty conclusion, or that Veilleux and McGowan's selection of the site fell below the sport's norms for anchor installation. In fact, they had considered a separate location for the anchor system, but rejected it because they determined that the one in which they installed the anchors was appropriate for the task.[4] They each belayed down the mountain on the rope anchor system that eventually failed and were followed by another student who, having completed his exercise, also successfully used the system.

## ANALYSIS

■ Summary judgment must be granted if the moving party establishes the right to the entry of judgment as a matter of law. (*Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) On review, we consider the parties' arguments and the evidence de novo. (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1513 [285 Cal.Rptr. 385].) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that . . . there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (§ 437c, subd. (o)(2); *Union Bank* v. *Superior Court, supra*, 31 Cal.App.4th 573; *Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282 [44 Cal.Rptr.2d 335].) ■ Supporting and opposing affidavits or declarations must be made on personal knowledge and must set forth admissible evidence; they must affirmatively demonstrate that the affiant is competent to testify to the matters asserted in them. (§ 437c, subd. (d); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1995) §§ 10:106-10:142, pp. 10-34 to 10-42.)

As a general rule, persons have a duty to use reasonable care to avoid injury to others, and may be held liable if their careless conduct injures

---

[4]Plaintiff has pointed out that Veilleux stated at her deposition that she and McGowan did not have enough webbing to set anchors at the rejected site. However, she also suggested that such webbing was available to them. In any case, she testified that webbing was not a factor in their ultimate rejection of the site.

another person. (See Civ. Code, § 1714.) "In order to determine the boundaries of the duty to prevent injury to others in any given case, we consider several factors, including the foreseeability of the harm, the degree of certainty of injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with the resulting liability for breach, and the availability, cost, and prevalence of insurance." (See *Scott* v. *Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 515; and *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561].)

The doctrine of assumption of risk is an exception to the general rule of liability. The watershed Supreme Court cases on assumption of risk are *Knight* v. *Jewett, supra,* 3 Cal.4th 296, and its companion case, *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769]. In *Knight,* using primary assumption of risk, the court analyzed the nature of the activity and the plaintiff and defendant's relationship to that activity. For nature of the activity, the court noted that the sports setting is unlike other settings where a duty is owed to all. (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 315.) Participants generally have no duty to eliminate risks inherent in the sport, but will be held liable for increasing the risk of injury. (*Id.* at p. 316.) The court then offered illustrations of risks inherent in certain sports. (Injury from a carelessly thrown ball during a baseball game; an extended elbow in a basketball game; injury to a player from a sliding base runner; a hockey player hit by an opposing player's hockey stick; a player injured during an informal tackle football game.) (*Id.* at pp. 316-320.) The court stated that ". . . defendant's liability in such cases turns on whether the defendant had a legal duty to avoid such conduct or to protect the plaintiff against a particular risk of harm." (*Id.* at pp. 316-317.)

Additionally, the court stated that ". . . the scope of the legal duty owed . . . will also depend on the defendant's role in . . . the sport." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 317.) In discussing the defendant's role in the sport the court offered the rationale behind excusing participants from liability in sports cases as being grounded in the notion that legal liability would inhibit the natural play of the game and alter the game's essential nature. The rules of liability must not interfere with the natural fervor with which athletes, amateur as well as professional, engage in sports activities. While "defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself," (3 Cal.4th at p. 315.) they

generally "do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (*Id.* at pp. 315-316.) While commercial sponsors and operators of a sporting activity have a duty not to increase the risks inherent in the activity (*Ferrari* v. *Grand Canyon Dories, supra*, 32 Cal.App.4th at p. 254), "[t]he overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature. [Citation.]" (32 Cal.App.4th at p. 253.)[5]

■ Plaintiff relies on cases involving student/instructor relationships and those involving commercial recreational operators in urging that defendant owed Mr. Roettgen a duty of care simply because he was enrolled as a student in defendant's commercial venture. The determination of duty in the student/instructor or commercial recreational operator cases turns not on the labels given to the sporting participants, but instead on the facts surrounding their levels of experience and/or their relationships to one another in the activity resulting in the plaintiff's injury. (*Galardi* v. *Seahorse Riding Club, supra*, 16 Cal.App.4th 817 [duty owed by coach to refrain from raising jumps beyond rider's experience absent warning]; *Tan* v. *Goddard, supra*, 13 Cal.App.4th 1528 [duty owed by instructor who directed jockey trainee to exercise a lame horse in reverse direction on rocky track]; *Wattenbarger* v. *Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746 [33 Cal.Rptr.2d 732] [duty owed to accomplished young pitcher instructed to keep pitching at tryout despite his report of arm pain]; *Yancey* v. *Superior Court* (1994) 28 Cal.App.4th 558 [33 Cal.Rptr.2d 777] [discus thrower's failure to see if field clear is not a risk inherent in sport]; *Ferrari* v. *Grand Canyon Dories, supra*, 32 Cal.App.4th 248 [no duty to enhance safety by changing water raft from industry standard].)

Defendant, as the moving party on the motion for summary judgment, had the burden of establishing that Norman Roettgen was not taken beyond his level of experience and capability in the activity culminating in his fall, and that the risk to him was not beyond that inherent in any top rope climbing

---

[5]While the question of "duty" is decided by the court and not the jury (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572 [224 Cal.Rptr. 664, 715 P.2d 624]), there are factual predicates to the analysis. (See, e.g., *Galardi* v. *Seahorse Riding Club* (1993) 16 Cal.App.4th 817 [20 Cal.Rptr.2d 270] [capability of rider and facts concerning array of jumps]; *Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528 [17 Cal.Rptr.2d 89] [experience level of student jockey and fact of horse's lameness]; *Ferrari* v. *Grand Canyon Dories, supra*, 32 Cal.App.4th 248 [rubber rafts and aluminum frames used were industry standard, and unmodified; seating arrangement was normal].)

activity. Defendant met its burden. (§ 437c, subds. (n)(2), (o)(2).) Falling, whether because of one's own slip, a coclimber's stumble, or an anchor system giving way, is the very risk inherent in the sport of mountain climbing and cannot be completely eliminated without destroying the sport itself. (*Yancey* v. *Superior Court*, *supra*, 28 Cal.App.4th 558, 565.)

Plaintiff offered evidence, and argues here, that certain of defendant's course protocols were violated by the instructors. Plaintiff points to the fact that Richard Johnson, the lead instructor, did not double-check the climb site and anchor installations in advance of the day's activities. The protocol documents were the subject of a timely objection (§ 437c, subds. (c) & (d); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, §§ 10:106-10:142, pp. 10-34 to 10-42) by defendant on the ground that no foundation properly authenticated them (Evid. Code, §§ 250, 403, 702, 1400). In any case, the protocols did not establish a duty on the part of defendant. (Cf. Evid. Code, §§ 669, 669.1.) Nor was there any evidence that failure of a nominal[6] lead instructor to double-check the work of two other instructors increased the risk to Mr. Roettgen or that such a procedure was routine for the sport.

Plaintiff argues that a duty of ordinary care should apply because of the special dangers posed by the sport of climbing. In *Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, 320, footnote 7, our Supreme Court noted "that because of the special danger to others posed by the sport of hunting, past cases generally have found the ordinary duty of care to be applicable to hunting accidents. (See, e.g., *Summers* v. *Tice* (1948) 33 Cal.2d 80, 83 [199 P.2d 1, 5 A.L.R.2d 91].)" Plaintiff urges that the sport of climbing poses similar "special dangers" and that a duty of ordinary care should apply. We disagree. The risk in hunting (being accidentally mistaken for prey by one's companions or other hunters) at issue in *Summers* v. *Tice*, *supra*, is a risk that does not occur in the absence of someone else's negligence. Inherent in the sport of rock climbing is the fact a fall can occur at anytime, regardless of the negligence of one's coparticipants.

Let an peremptory writ of mandate issue commanding respondent Superior Court for the County of Alameda in Roettgen v. Regents of University of California (No. 732063-9) to set aside its order denying defendant's

---

[6]According to McGowan and Johnson, the designated lead instructor varied on different trips. McGowan had in fact been a lead on prior trips sponsored by defendant.

motion for summary judgment and to instead enter its order granting summary judgment. The stay previously imposed shall remain in effect until the remittitur issues.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied February 7, 1996, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied March 28, 1996. Mosk, J., was of the opinion that the petition should be granted.