[No. G017227. Fourth Dist., Div. Three. Mar. 12, 1998.]

RYAN BALTHAZOR, a Minor, etc., et at., Plaintiffs and Appellants, v. LITTLE LEAGUE BASEBALL, INC., et al., Defendants and Respondents.

**COUNSEL**

Berneman & Berneman, Isaac Berneman and Norma S. Berneman for Plaintiffs and Appellants.

Kirtland & Packard, Mark P. Poliquin, Robert A. Johnson and Ron Thommarson for Defendants and Respondents.

**OPINION**

**WALLIN, J.**—Ryan Balthazor and his mother sued Saddleback Little League and Little League Baseball, Inc. (collectively the League) for injuries

sustained by Balthazor when he was struck by a wild pitch during a baseball game. An arbitrator ruled in their favor; the League requested a trial de novo. The trial court granted the League's request for summary judgment, concluding recovery was barred by the doctrine of primary assumption of risk, as set forth by our Supreme Court in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]. Balthazor and his mother appeal contending the League increased the risks inherent in the game, making this a case of secondary assumption of risk instead. Therefore, there were material issues of fact making summary judgment improper. We affirm.

On April 3, 1991, 11-year-old Balthazor was playing in a League-sponsored baseball game. The record does not reflect when the game began, but the teams were still playing at 6:00 p.m. Balthazor's mother testified it was a clear day and the sun was up when the game began, but it was getting difficult to see when Balthazor went to bat around 6:10 p.m. The field had no lights. An almanac indicated the sun set at 6:13 p.m.

Balthazor wore the standard uniform required by the League, which included a batting helmet without a face guard. He ducked to avoid being hit by the first pitch from the 15-year-old pitcher. The second pitch struck him in the face, causing serious injuries. It is undisputed that the pitch was thrown without the intent to hit Balthazor, although the pitcher had previously struck two other players during the game.

█ Balthazor contends the trial court erred in finding his injuries were the result of a risk inherent in the sport of baseball, and are barred under the doctrine of primary assumption of risk. We disagree.

█ We begin by setting forth the relevant legal principles. Assumption of risk falls into two categories: primary and secondary. Primary assumption of risk occurs when a plaintiff voluntarily engages in a sport or activity with inherent risks. It embodies those instances where there is a "legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from that particular risk . . . ." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 308.) Secondary assumption of risk embodies "those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty . . . ." (*Ibid.*) Secondary assumption of risk cases are "merged into the comprehensive comparative fault system." (*Ibid.*)

*Knight* considered the circumstances under which a participant in a touch football game could be held liable for injury to another participant. (3 Cal.4th at p. 318.) In *Knight*, the plaintiff was injured when the defendant

knocked her down and stepped on her hand. The Supreme Court reasoned, "in the heat of an active sporting event like baseball or football, a participant's normal energetic conduct often includes accidentally careless behavior." It concluded it was "improper to hold a sports participant liable to a coparticipant for ordinary careless conduct committed during the sport—*for example, for an injury resulting from a carelessly thrown ball or bat during a baseball game . . . .*" (*Ibid.*, italics added.) Instead, liability should attach only when the defendant has increased the "risks to a participant over and above those inherent in the sport." (*Id.* at p. 316.)

We look to the "nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport" to determine if a defendant owes a duty to protect a plaintiff from the particular risk of harm. (3 Cal.4th at p. 309.) Unlike *Knight,* which involved coparticipants in a sport, this case involves a youthful player and the organization sponsoring the game. Since the League has supervisory control over the game, through the volunteer coaches and umpires, the relationship here is similar to that of a student and teacher or coach and player, and cases arising in that context are most instructive.

The cases agree instructors " 'have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport.' " (*Fortier* v. *Los Rios Community College Dist.* (1996) 45 Cal.App.4th 430, 435 [52 Cal.Rptr.2d 812]; *Regents of University of California* v. *Superior Court* (1996) 41 Cal.App.4th 1040, 1046 [48 Cal.Rptr.2d 922]; *Bushnell* v. *Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525, 530 [50 Cal.Rptr.2d 671].) An instructor is not an insurer of the student's safety. (*Bushnell* v. *Japanese-American Religious & Cultural Center, supra,* 43 Cal.App.4th at p. 532.)

In *Fortier* v. *Los Rios Community College Dist., supra,* 45 Cal.App.4th 430, the plaintiff had assumed the risk of injuries sustained in a noncontact football practice when he collided with another player. (*Id.* at p. 433.) He claimed the instructors increased the risks inherent in the sport by encouraging aggressive play, keeping track of interceptions and receptions so as to encourage them, and by not providing safety helmets. Noting an instructor's duty not to increase the risks over those inherent in the sport (*id.* at p. 435), the court rejected the plaintiff's argument. Aggressive play and keeping track of interceptions and receptions did not increase the risks because they were normal aspects of the game. Furthermore, use of helmets was not a normal aspect of noncontact football and to require their use would fundamentally alter the nature of the sport. In short, the court concluded the risk of injury from an accidental collision is inherent to noncontact football drills and the plaintiff could not recover for his injuries. (*Id.* at p. 440.)

Similarly, in *Regents of University of California* v. *Superior Court, supra,* 41 Cal.App.4th 1040, the doctrine of primary assumption of risk barred a plaintiff's negligence action when a student enrolled in a rock climbing class fell to his death because anchor devices installed by the instructor came loose. It was held that an imposition of duty on the instructor to prevent the student from falling would chill vigorous participation in the sport and alter its fundamental nature. (*Id.* at p. 1046.) Falling, for whatever reason, is an inherent risk in the sport of rock climbing. (*Id.* at p. 1047.) Absent evidence the instructor had taken the student beyond his level of experience and capability, the risk was no different in this climbing incident than in any other. (*Id.* at p. 1046.) Therefore, primary assumption of risk applied.

Balthazor's reliance on *Galardi* v. *Seahorse Riding Club* (1993) 16 Cal.App.4th 817 [20 Cal.Rptr.2d 270], *Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528 [17 Cal.Rptr.2d 89], and *Wattenbarger* v. *Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746 [33 Cal.Rptr.2d 732], is misplaced. In each of those cases, the instructor gave specific directions to the participant which "increase[d] the risk of harm inherent in the sport." (*Fortier* v. *Los Rios Community College Dist., supra,* 45 Cal.App.4th at p. 435.) In *Galardi,* a riding instructor directed his student to jump his horse over fences that were " 'unreasonably and unnecessarily high for the circumstances . . . .' " (*Galardi* v. *Seahorse Riding Club, supra,* 16 Cal.App.4th at p. 819.) In *Tan,* a student jockey was instructed to ride a lame horse in the wrong direction on an unsafe track. (*Tan* v. *Goddard, supra,* 13 Cal.App.4th at p. 1531.) Finally, in *Wattenbarger,* the supervisors for a team tryout permitted the pitcher to continue to pitch after he complained that he had injured his arm. (*Wattenbarger* v. *Cincinnati Reds, Inc., supra,* 28 Cal.App.4th at p. 750.) These cases "stand for the proposition that when an instructor acts so as to increase the risk of harm inherent in a particular sport, the instructor may not thereafter rely on primary assumption of risk." (*Fortier* v. *Los Rios Community College Dist., supra,* 45 Cal.App.4th at p. 436.)

█ In light of these authorities, we turn to Balthazor's arguments. He contends that the League breached its duty not to increase the risks inherent in baseball in three ways. But each factor was in reality a normal aspect of Little League baseball as played by youngsters everywhere. There was nothing done in this game, no specific acts or directions given by League officials, which increased the risk of injury beyond that present in any other game.

First, Balthazor argues the League negligently supervised the game by failing to end it as sunset approached. He contends diminished lighting increased the risk of being hit by the ball. We find his argument unpersuasive. Baseball is played under various lighting conditions, even during the

day. On a bright sunny day, the position of the ball relative to the sun can result in an increased risk of being hit by either a thrown or batted ball. Changing lighting conditions are inherent in the sport. It was not dark when the injury occurred, the sun had not set, and Balthazor admitted he saw and avoided the first pitch. Balthazor's injury was simply a result of an inherent risk in the sport—a risk specifically recognized by *Knight. (Knight* v. *Jewett, supra,* 3 Cal.4th at p. 316.)

Balthazor's second contention is even more tenuous. He claims the League was negligent in failing to remove the "wild pitcher" from the game because he had earlier struck two other players. Accuracy in pitching, especially from a teenager, has never been a prerequisite to being allowed to pitch. Even major league pitchers and managers frequently rue a loss due to "those bases on balls." To so hold would be to alter the fundamental nature of the game and most certainly chill vigorous participation.

Finally, Balthazor claims the League had a duty to reduce the risk of injury from being struck by a baseball by providing helmets with faceguards. He misunderstands the mandate of our Supreme Court. Under primary assumption of risk, the defendant has a duty not to increase the risks inherent in the sport, not a duty to decrease the risks. For example, in *Connelly* v. *Mammoth Mountain Ski Area* (1995) 39 Cal.App.4th 8 [45 Cal.Rptr.2d 855], the court declined to hold that a ski resort had a duty to decrease the risk of injury by padding the ski-lift towers. (*Id.* at p. 12.) In *Fortier* v. *Los Rios Community College Dist., supra,* 45 Cal.App.4th 430, the court rejected the plaintiff's contention that failure to provide specific safety equipment, in that case a helmet, increased the risk of injury in noncontact football. Although in *Fortier* the court noted there was evidence helmets could increase the risk of injury, it also noted that even if helpful requiring protective equipment was not part of the normal playing of noncontact football. "[W]ere we to hold defendants liable for failure to provide helmets, the effect would be to alter fundamentally the nature of the recreational sport of [noncontact or touch] football as played and enjoyed by thousands. . . . Typically participants in such games do not wear helmets or, for that matter, other protective equipment. To impose the duty to provide such equipment on schools and other supervisors and organizers of such sport in order to avoid liability for injuries inherent in the rough and tumble of such activity would have enormous social and economic consequences. [Citation.] The opportunities to participate in organized, recreational football would be significantly diminished." (*Id.* at p. 439.) Here, the face guard which Balthazor argues should have been required was not part of the normal safety equipment used by the League. The League's failure to require additional equipment did not increase a risk inherent in the sport: that a player might be struck by a carelessly thrown ball.

In conclusion, Balthazor has failed to assert any basis for finding that the League breached a duty to protect him from the injury sustained. The injury resulted from an errant pitch, a risk inherent in the sport.[1]

The judgment is affirmed.

Sills, P. J., and Rylaarsdam, J., concurred.

---

[1]Because we hold primary assumption of risk bars Balthazor's negligence action, his mother's claim for negligent infliction of emotional distress is similarly barred. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 733 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. ["In the absence of the primary liability of the tortfeasor[,] . . . we see no ground for an independent and secondary liability for claims for injuries by third parties."].)