[No. A096513. First Dist., Div. Three. July 31, 2002.]

ROXANE RODRIGO, Plaintiff and Appellant, v.
KORYO MARTIAL ARTS, Defendant and Respondent.

**COUNSEL**

Roxane Rodrigo, in pro. per., for Plaintiff and Appellant:

Jackson & Harrigan, John J. Murray and Anne B. Harrigan for Defendant and Respondent.

**OPINION**

**McGUINESS, P. J.**—Roxane Rodrigo (appellant) was injured while participating in a tae kwon do class conducted by Koryo Martial Arts (respondent) in San Bruno. Appellant sued respondent on a negligence theory, alleging that her injury resulted from "insufficient supervision and control when she

was kicked by a student." Respondent moved for summary judgment, based on the theory that it owed no duty of care to appellant under the doctrine of primary assumption of risk set forth in *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*). The trial court granted the motion and entered judgment in respondent's favor. This appeal ensued.

As set forth in detail in part III., *post,* we conclude that an instructor's duty to a student under the doctrine of primary assumption of risk is limited to acting in a fashion that does not increase the risks inherent in learning a sport. Applying that standard to the undisputed facts in the case before us, we find that respondent did nothing to increase the risks associated with learning tae kwon do. Thus, the doctrine of primary assumption of risk applies and bars any potential recovery by appellant. Accordingly, we affirm.

## I. Facts

In support of its motion for summary judgment, respondent presented 29 facts it contended were undisputed. Appellant did not dispute 16 of those proposed facts. We summarize the relevant undisputed facts in the following two paragraphs.

Appellant enrolled in respondent's school on July 25, 1999. She had been taking classes for approximately four months before she was injured. At the time she enrolled, appellant was aware that "any sport" carried a risk of injury. Indeed, before she signed up for classes, appellant knew that, if she were involved in an active sport that involved kicking and jumping, she might be injured. Tae kwon do is a martial art that "seeks to integrate mental acuity and emotional discipline with strenuous physical activity and inter-personal combat with both kicking and punching. Personal discipline and respect for the teaching master and other students are essential elements" of the sport.

On November 22, 1999, the day appellant was injured, she was attending a class conducted by Master Ki Bok Kim, a fourth degree black belt, certified as a "master" by the world governing body for tae kwon do. Six adults were involved in the class being conducted by Master Kim. A class of 11 children was being conducted simultaneously with the adult class; that class was under the control of an assistant to Master Kim. The adult students were practicing a kick in which they were aiming at a target—a cushioned leather pad held by Master Kim. The adults were lined up, waiting for a turn to kick the target, when appellant's injury occurred.

In opposition to respondent's motion, appellant presented excerpts from her deposition in which she testified that, while standing in line, she saw

another student complete his kick. As appellant was preparing to initiate her kick, she felt "something" on her leg. She believes someone kicked her, but she does not know who. The apparent kick caused a rupture of the Achilles tendon in appellant's leg.

## II. STANDARD OF REVIEW

"Summary judgment must be granted if the moving party establishes the right to the entry of judgment as a matter of law. [Citation.]" (*Regents of University of California v. Superior Court* (1996) 41 Cal.App.4th 1040, 1044 [48 Cal.Rptr.2d 922] (*Regents*). A defendant may meet the burden of demonstrating that a cause of action has no merit by showing that one of the necessary elements of the cause of action does not exist or that there is a complete defense to that cause of action. (*Bushnell v. Japanese-American Religious & Cultural Center* (1996) 43 Cal.App.4th 525, 528 [50 Cal.Rptr.2d 671] (*Bushnell*).) Once a defendant meets that burden, the burden shifts to the plaintiff to demonstrate that a triable issue of one or more material facts exists as to that cause of action or the defense. (*Regents, supra,* 41 Cal.App.4th at p. 1044.) Whether or not the doctrine of primary assumption of risk applies presents a question of legal duty; because " 'duty is an issue of law to be decided by the court, the applicability of that [doctrine] is amenable to resolution by summary judgment.' [Citation.]" (*Bushnell, supra,* 43 Cal.App.4th at p. 528.) As a reviewing court, we consider the evidence and the parties' arguments de novo. (*Ibid.*)

## III. ANALYSIS

### A. *Primary and Secondary Assumption of Risk*

In *Knight,* a plurality of the Supreme Court addressed "the proper application of the 'assumption of risk' doctrine in light of [its] adoption of comparative fault principles in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]." (*Knight, supra,* 3 Cal.4th at pp. 299-300.) The court concluded that the doctrine survived *Li* in two forms—primary and secondary assumption of risk. The former doctrine "embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk." In secondary assumption of risk, the defendant owes a duty to the plaintiff, but the plaintiff "knowingly encounters a risk of injury caused by the defendant's breach of that duty." (*Knight, supra,* 3 Cal.4th at p. 308.) Where secondary assumption of risk applies, liability is apportioned under principles of comparative fault. (*Id.* at p. 310.) However, where primary assumption of risk applies, the doctrine acts as a complete bar to the plaintiff's recovery. (*Ibid.*)

The Supreme Court provided some guidance for resolving the duty issue involved in application of the doctrine of primary assumption of risk. After pointing out that, generally, persons have a duty to use due care to avoid injuries to others, the court noted that in a "sports setting, however, conditions or conduct that otherwise might be viewed as dangerous are an integral part of the sport itself. Thus, although moguls on a ski run pose a risk of harm to skiers that might not exist were these configurations removed, the challenge and risks posed by the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them. [Citation.] In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant. [¶] Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to *increase* the risks to a participant over and above those inherent in the sport. Thus, although a ski resort has no duty to remove moguls from a ski run, it clearly does have a duty to use care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm. The cases establish that the latter type of risk, posed by a ski resort's negligence, clearly is not a risk (inherent in the sport) that is assumed by a participant. [Citation.]" (*Knight, supra,* 3 Cal.4th at pp. 315-316, italics added.)

The court added: "Rather than being dependent on the knowledge or consent of the particular plaintiff, resolution of the question of the defendant's liability . . . turns on whether the defendant had a legal duty to avoid conduct [leading to injury] or to protect the plaintiff against a particular risk of harm. As already noted, the nature of a defendant's duty in the sports context depends heavily on the nature of the sport itself. Additionally, the scope of the duty owed by a defendant frequently will also depend on the defendant's *role in, or relationship to,* the sport." (*Knight, supra,* 3 Cal.4th at pp. 316-317, italics added.)

The court then reviewed case authority addressing the potential liability of different classes of defendants in a sports-related context, such as owners of baseball stadiums and ski resorts, manufacturers of sporting goods and coaches and instructors. The court stated that those "cases demonstrate that in the sports setting, as elsewhere, the nature of the applicable duty or standard of care frequently varies with the role of the defendant whose conduct is at issue in a given case." (*Knight, supra,* 3 Cal.4th at p. 318.)

*Knight* involved an injury that occurred during an informal touch football game, when the defendant allegedly ran into the plaintiff, knocking her to the ground and stepping on her hand. (*Knight, supra,* 3 Cal.4th at p. 300.)

Accordingly, the Supreme Court focused its attention on the role of primary assumption of risk in suits between participants in athletic events. Again, the court reviewed relevant authority and found the reasoning of the cases "sound." (*Id.* at p. 320.) Based on that authority and its analysis of principles underlying primary assumption of risk, the court concluded "that a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Ibid.*, fn. omitted.) Because the defendant's conduct did not fall "totally outside the range of the ordinary activity involved" in touch football, the court found that primary assumption of risk applied and that the defendant owed no duty to the plaintiff. Thus, the court affirmed the judgment of the Court of Appeal, upholding the summary judgment entered by the trial court in the defendant's favor. (*Id.* at pp. 320-321.)

Left unresolved by *Knight* was the role played by primary assumption of risk in cases involving injured students and their coaches or instructors. The first two appellate courts to consider that issue found the doctrine inapplicable in cases involving riding injuries. In *Tan v. Goddard* (1993) 13 Cal.App.4th 1528 [17 Cal.Rptr.2d 89] (*Tan*), Division Four of the Second Appellate District considered a case in which Tan was enrolled in a jockey school owned by Goddard. One of Goddard's instructors, Davis, told Tan that Faraway Falcon, one of the horses Tan had been riding, had injured its foot and that he should ride the horse easily to see how it was doing. Tan found the horse "off" because it did not walk or behave normally. Davis told Tan that the horse was safe to ride and gave Tan "precise instructions" on how to do so. Some days later, Davis told Tan to exercise Faraway Falcon again; Tan found that the horse was still "off" and told Davis. Nonetheless, Davis told Tan to ride the horse—and to ride it in the opposite direction from the one usually used, on an area of the track with a high concentration of rocks. While Tan was riding as instructed by Davis, the horse stepped on something and went down, injuring Tan. Tan sued Goddard, and the trial court entered summary judgment in Goddard's favor based on principles of assumption of risk. (*Id.* at pp. 1530-1532.) The Court of Appeal first noted that *Knight* had not resolved the question of the duty owed by instructors or coaches to their charges. (*Id.* at pp. 1532-1534.) The court then reviewed out-of-state cases and secondary authorities and concluded that, generally, coaches and instructors, while not insurers, owe a duty of care to their charges. (*Id.* at p. 1535.) The court noted that in the case under review Tan followed the directions of an instructor who knew that the horse in question was "off" and who knew or should have known about the dangerous

condition of the track. The court concluded that "under the circumstances," "Davis's role as riding instructor to Tan was such that he owed Tan a duty of ordinary care to see to it that the horse he assigned Tan to ride was safe to ride under the conditions he prescribed for that activity." (*Ibid.*) Accordingly, the Court of Appeal found that the doctrine of primary assumption of risk did not apply and reversed the summary judgment entered in Goddard's favor. (*Id.* at pp. 1535-1536.)

In *Galardi v. Seahorse Riding Club* (1993) 16 Cal.App.4th 817 [20 Cal.Rptr.2d 270] (*Galardi*), Division Two of the Second Appellate District addressed a case in which an accomplished equestrian was injured when her horse failed to clear jumps set up by a riding instructor at the Seahorse Riding Club. Galardi claimed that the instructor twice raised the height of the jumps without lengthening the distance between them and then asked Galardi to ride through the jumps in the opposite direction from which she had previously jumped them. (*Galardi, supra,* 16 Cal.App.4th at p. 820.) The trial court granted summary judgment, based on "assumption of risk." (*Id.* at p. 819.) The Court of Appeal focused on the language in *Knight* that the existence of a duty in a sports context depends on the nature of the sport and the relationship of the defendant and the plaintiff to that sport. (*Id.* at pp. 821-822.) The court determined that, given the relationship between the plaintiff and the defendants (the riding club and the instructor), the latter "certainly had a duty to avoid an unreasonable risk of injury to plaintiff and to take care that the jumping array was not beyond the capability of horse and rider." (*Id.* at p. 823.) The court also considered *Tan, supra,* 13 Cal.App.4th 1528, concluded that *Tan* was properly decided and agreed that "the general rule is that coaches and instructors owe a duty of care to their charges. Thus, a complaint raising the issue of coach or instructor negligence during training involves secondary assumption of risk which is not a complete bar to recovery . . . ." Accordingly, the court concluded that the trial court erred in entering summary judgment in the defendants' favor. (*Galardi, supra,* 16 Cal.App.4th at pp. 823-824.)

In *Regents,* Division One of this appellate district considered a case in which a student rock climber was killed after a fall allegedly caused by his instructors' improper placement of rope anchors in a single crack system on a rock face he and the instructors were climbing. The defendants moved for summary judgment based on the doctrine of primary assumption of risk. The trial court denied the motion. The Court of Appeal issued a writ of mandate, compelling the trial court to enter summary judgment in the defendants' favor. (*Regents, supra,* 41 Cal.App.4th at pp. 1042-1044, 1047-1048.) The court rejected the plaintiff widow's claim that, as instructors, the defendants owed her deceased husband "a duty of care simply because he was enrolled

as a student in defendant's commercial venture. The determination of duty in the student/instructor or commercial recreational operator cases turns not on the labels given to the sporting participants, but instead on the facts surrounding their levels of experience and/or their relationships to one another in the activity resulting in the plaintiff's injury. (*Galardi* v. *Seahorse Riding Club, supra,* 16 Cal.App.4th 817 [duty owed by coach to refrain from raising jumps beyond rider's experience absent warning]; *Tan* v. *Goddard, supra,* 13 Cal.App.4th 1528 [duty owed by instructor who directed jockey trainee to exercise a lame horse in reverse direction on rocky track]; [citations].)" (*Regents, supra,* 41 Cal.App.4th at p. 1046.) Applying those principles, the Court of Appeal found that the defendants had met their burden of demonstrating that the decedent had not been "taken beyond his level of experience and capability in the activity culminating in his fall, and that the risk to him was not beyond that inherent in any top rope climbing activity." (*Id.* at pp. 1046-1047.) The court concluded that "[f]alling, whether because of one's own slip, a coclimber's stumble, or an anchor system giving way, is the very risk inherent in the sport of mountain climbing and cannot be completely eliminated without destroying the sport itself. [Citation.]" (*Id.* at p. 1047.)

In *Bushnell,* Division One of this district went a step further in discussing *Tan* and *Galardi* in the context of a case in which a student was injured while practicing throws with an instructor at a judo club. The Court of Appeal affirmed summary judgment entered in favor of the defendant club. (*Bushnell, supra,* 43 Cal.App.4th at pp. 528-529.) The court noted "in all cases [in which the doctrine of primary assumption of risk is asserted as a bar to recovery] the nature of the activity, the relationship of the defendant to the activity and the relationship of the defendant to the plaintiff must be examined. It must then be determined, in light of the activity and these relationships, whether the defendant's conduct at issue is an 'inherent risk' of the activity such that liability does not attach as a matter of law. General rules of liability attach when the defendant's conduct is not an inherent risk of the activity or when the defendant's conduct increased the inherent risks in the activity." (*Id.* at p. 530.) The court went on to state that the "doctrine of primary assumption of risk can apply even if the defendant was in some manner in control of the situation and thus in a better position than the plaintiff to prevent the plaintiff's injury." (*Id.* at p. 531.) In support of that proposition, the Court of Appeal cited *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769], the companion case to *Knight,* in which the Supreme Court applied the doctrine to find that a ski boat driver did not have a duty to avoid an overhanging branch and consequent injury to someone skiing backwards and barefoot behind his boat. (*Bushnell, supra,* 43 Cal.App.4th at p. 531.) The court then revisited *Tan* and

*Galardi* and indicated that it believed that both were consistent with *Knight* and *Ford,* if they were read as finding liability on the defendants' part based on their having "increased [the] inherent risks" of the activity in question. (*Id.* at p. 534.) However, the *Bushnell* court disagreed with *Tan* and *Galardi* to the extent that they might be read as establishing a broad rule that instructors owe a general duty of care to their students, finding such a rule inconsistent with both the language set forth in, and the policies underlying, *Knight* and *Ford.* (*Bushnell, supra,* 43 Cal.App.4th at pp. 533-534.)[1]

In *Fortier v. Los Rios Community College Dist.* (1996) 45 Cal.App.4th 430, 432-433 [52 Cal.Rptr.2d 812] (*Fortier*), the Third Appellate District affirmed a summary judgment entered in favor of a community college district that conducted an "advanced football" training class. The defendant was sued for negligence by a young man who was injured in a collision with another player while the plaintiff was attempting to catch, and the other player was attempting to intercept, a pass during a noncontact passing drill. (*Ibid.*) The Court of Appeal found that the doctrine of primary assumption of risk applied because the injury resulted from a risk inherent in football, and the defendant did nothing to increase that risk. In addition, the court read *Tan* and *Galardi* as standing "for the proposition that when an instructor acts so as to increase the risk of harm inherent in a particular sport, the instructor may not thereafter rely on primary assumption of the risk." (*Fortier,* 45 Cal.App.4th at pp. 434-436.)

In *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 460 [63 Cal.Rptr.2d 291, 936 P.2d 70] (*Parsons*), the Supreme Court reexamined the doctrine of primary assumption of risk in a case in which the plaintiff was injured when a horse he was riding on a bridal path was frightened by noise from a garbage truck that was operating nearby "in its normal manner." The court found that the disposal company owed a very limited duty of care to the plaintiff rider and that the company did not breach that duty. Accordingly, the Supreme Court found that summary judgment had properly been entered in favor of the defendant. (*Id.* at pp. 482-485.) In reaching that conclusion, the court reviewed its decision in *Knight,* then moved to a discussion of Court of Appeal decisions that had followed *Knight* in different contexts: "As illustrated by Court of Appeal cases decided since *Knight, supra,* 3 Cal.4th 296, there are circumstances in which the relationship between defendant and plaintiff gives rise to a duty on the part of the defendant to use due care not to increase the risks inherent in the plaintiff's activity. For example, a purveyor of recreational activities owes a duty to a

---

[1]The *Bushnell* approach to *Tan* and *Galardi* was endorsed by Division Two of the Fourth Appellate District in *Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1369-1371 [59 Cal.Rptr.2d 813] (*Snow Summit*).)

patron not to increase the risks inherent in the activity in which the patron has paid to engage. [Citations.] Likewise, a coach or sport instructor owes a duty to a student not to increase the risks inherent in the learning process undertaken by the student. (See, e.g., [*Tan, Galardi, Fortier* and *Regents*].)"[2] (*Parsons, supra,* 15 Cal.4th at p. 482.)

As reflected above, although *Tan* and *Galardi* both stated that instructors owe a general duty of care to those in their charge, *Fortier* and *Regents* suggested that those cases should be read more narrowly—that is, finding a duty of care only when an instructor increases the risk of injury inherent in the sport in which instruction is being offered. The Supreme Court's citation of all four cases, coupled with its statement that a coach owes a duty not to increase the risks inherent in the student's learning process, leads us to conclude that the Supreme Court reads *Tan* and *Galardi* in the limited fashion suggested by *Fortier* and *Regents*. ▉ ▉▉ Further, it appears that the Supreme Court has implicitly endorsed the rule that instructors and coaches owe a limited duty to their students—that is, not to increase the risks inherent in the learning process of the sport or activity in which instruction is being offered. (*Parsons, supra,* 15 Cal.4th at p. 482.)[3] We concur with the approach taken to *Tan* and *Galardi* by *Fortier, Regents, Bushnell,* and *Snow Summit,* as tacitly endorsed by the Supreme Court in *Parsons.* Accordingly, we will now proceed to analyze the case before us to determine whether appellant raised a triable issue of fact regarding respondent's having increased the risk of learning tae kwon do.

B. *Respondent Is Insulated from Liability Under the Doctrine of Primary Assumption of Risk*

1. *Respondent did not increase the risks inherent in learning tae kwon do*

▉ As reflected above, under *Knight,* a determination of whether the doctrine of primary assumption of risk applies in a given case involves an

---

[2] The Supreme Court resolved *Parsons* based on a determination that where parties have no relationship and are, instead, "independent actors, separately pursuing their own activities," "a defendant generally has no duty to avoid increasing the risks inherent in a plaintiff's activity." (*Parsons, supra,* 15 Cal.4th at pp. 482-483.)

[3] We recognize, of course, that the Supreme Court's discussion of primary assumption of risk in a student/instructor context constitutes dictum. Dictum of the Supreme Court, while not controlling, carries "persuasive weight" and should be followed when it demonstrates either "a thorough analysis of the issue" or "compelling logic." (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [262 Cal.Rptr. 754].) In *Parsons,* the Supreme Court did not undertake a detailed analysis of the cases it cited. However, as analyzed in the body of this part, the court's citation of these cases gives weight to the manner in which *Regents* and *Fortier* construed *Tan* and *Galardi.* Moreover, the doctrine of primary assumption of risk was established by the Supreme Court in *Knight.* Thus, the court's statements about the evolution of the doctrine are of significance to any court, such as this one, that must apply the doctrine in new factual contexts and in response to new arguments.

analysis of both the risks inherent in the sport under consideration and the defendant's role in, or relationship to, the sport. (*Knight, supra,* 3 Cal.4th at pp. 316-318.) Here, because respondent filled the role of instructor, we must consider whether evidence was presented raising a triable issue of fact regarding respondent's having increased the risks inherent in learning tae kwon do. (*Parsons, supra,* 15 Cal.4th at p. 482.)

As noted in part I., *ante,* respondent presented uncontroverted evidence that tae kwon do is a martial art, involving "strenuous physical activity and interpersonal combat with both kicking and punching." It is self-evident that a sport that involves interpersonal combat with both kicking and punching carries not just the inherent risk—but arguably the certainty—that a participant will not only kick and punch other participants but will also be kicked and punched by others. Likewise, learning how to kick and punch in a class in which other students are also learning the same skills involves the same risks.

Our next point of inquiry is whether any evidence was presented from which it may be inferred that respondent increased the risk of injury inherent in learning the sport. Here, Master Kim organized a practice drill in which students were to take turns kicking a leather pad. Appellant presented no evidence—and we see no basis for inferring—that such a drill increases the risks inherent in learning the sport. Moreover, appellant presented no evidence—and we see no basis for inferring—that having individual class participants line up and wait their turn increases the risks inherent in learning tae kwon do. In sum, undisputed facts support the conclusion that being injured as a result of being kicked, punched or otherwise contacted by other students is an inherent risk of participating in, and learning the discipline of, tae kwon do and that respondent engaged in no actions that increased the risk of appellant's being kicked or punched.

### 2. *Appellant's expectation that she would not be injured is irrelevant to application of the doctrine of primary assumption of risk*

Appellant offered two factual/legal points in opposition to respondent's motion that merit discussion. Appellant's first point was presented in response to a proposed undisputed fact offered by respondent—that physical injury is an "inherent, ever-present risk in any Tae Kwon Do activity, including practice sessions of the type in which [appellant] was involved when her injury supposedly occurred." Appellant contended that there "should be no risk of physical injury when one is waiting in a line to do a Tae Kwon Do activity." Appellant supported her contention by citing a

portion of her deposition in which she testified that when the injury occurred, she was not involved in sparring or fighting; she was merely "standing in a line without doing anything."

Appellant's first point reflects a misunderstanding of the doctrine of primary assumption of risk. As applicable here, the doctrine of primary assumption of risk involves a determination of the duty owed by a defendant/instructor to a plaintiff/student. The scope of that duty is not determined by the student's expectations or understanding of the risks involved in the activity in which an injury occurs; rather, the scope of the duty is determined, as a matter of law, by the courts, based on the nature of the sport and the parties' relationship to each other and the sport. (*Knight, supra,* 3 Cal.4th at pp. 312-315.) Thus, appellant's assertion that she did not believe she was at risk—or that she "should" not have been at risk—of being injured while she was merely standing in line is irrelevant to a determination of the duty owed by respondent under the doctrine of primary assumption of risk. (Cf. *id.* at pp. 302-315.)

*Knight* and *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628 [53 Cal.Rptr.2d 657] (*Staten*) provide illustrations of the error in appellant's approach. In *Knight,* the plaintiff submitted evidence in opposition to the defendant's motion for summary judgment in an effort to demonstrate that she had no reasonable expectation of injury in the informal, coed touch football game in which she participated. For example, she submitted her own declaration, as well as declarations and deposition testimony from other game participants, in an effort to establish that the game was to be "a 'mellow' one," in which the only type of injury that could reasonably be anticipated was a bump or a bruise. She also presented evidence that, once the defendant began to exhibit aggressive play before her injury, she told him that he was playing too rough and that she would quit if he did not cease his rough play; she declared that the defendant gave her the "impression" that he would refrain from such conduct. She maintained that the evidence presented established a disputed factual issue as to whether "she voluntarily had chosen to assume the risks of the *type of conduct* allegedly engaged in by defendant." (*Knight, supra,* 3 Cal.4th at p. 302, italics added.) In determining that primary assumption of risk barred her claims, the Supreme Court rejected the concept that Knight's assessment of the risks of injury stemming from the defendant's aggressive conduct was relevant to potential application of the doctrine of primary assumption of risk (*id.* at p. 313) and instead assessed the risks associated with playing active sports, generally. (*Id.* at pp. 315-320.) Among the risks discussed by the court is the possibility that a participant will act negligently or break a rule of the sport in the heat of

competition. (*Id.* at pp. 318-319.) Ultimately, the court determined that the defendant's aggressive play did not constitute intentional misconduct or reckless behavior outside the "range of the ordinary activity involved in the sport." (*Id.* at p. 320, fn. omitted.) Thus, the defendant's conduct did not breach a legal duty owed to the plaintiff under the doctrine of primary assumption of risk. (*Id.* at pp. 320-321.)

*Staten* applied the principles discussed above to a case in which the plaintiff, Bafus, was injured during a practice skating session at a local skating rink. Like appellant in the case before us, Bafus was in a fixed position when she was injured. Bafus was on the ice, practicing spins, when she was struck—and cut—by the skate of another skater, Staten, who was skating backwards when she struck Bafus. Bafus sued Staten, the rink, the skating club of which Bafus was a part, and others. The trial court denied a defense motion for summary judgment. Division Five of this district issued a writ of mandate, compelling entry of judgment in favor of the petitioning defendants. (*Staten, supra,* 45 Cal.App.4th at pp. 1630-1632, 1636-1637.) In analyzing whether primary assumption of risk applied, the Court of Appeal rejected Bafus's claim that being injured by a "backward-moving skater" was not an inherent risk of figure skating. In so doing, the court implicitly rejected Bafus's assertion that Staten had a duty to check that her route was clear before beginning her backward skate. Instead, the court focused on the nature of figure skating as a sport in which "the fluidity of action and the presence of [other skaters] renders the risk of collision inherent." (*Id.* at p. 1634.)

As illustrated by *Knight* and *Staten*, for purposes of applying the doctrine of primary assumption of risk, the focus is not on the plaintiff's expectation of the risks associated with the sport—or the specific aspects of the sport—in which he or she is engaged. Thus, in *Knight*, the plaintiff's expectation that the game would "be a 'mellow' one" in which the defendant would not engage in the "type of conduct" that led to her injury did not preclude application of the doctrine of primary assumption of risk. (*Knight, supra,* 3 Cal.4th at p. 302.) Likewise, in *Staten*, the plaintiff's expectation that she would not be injured in a collision with another skater, while doing nothing more than practicing spins from a fixed position, did not preclude application of the doctrine of primary assumption of risk.

Applying the principles set forth and applied in *Knight* and *Staten* to the case before us, we reinforce the fact that tae kwon do is a martial art involving mutual combat. Inherent in participating in—and learning—that sport is the risk of injury stemming from being punched, kicked or otherwise

contacted by a fellow competitor or student. Appellant's expectation that she would not be injured while engaged in some specific aspect of her training—waiting in line for a turn to kick a target—is irrelevant to a determination that primary assumption of risk bars her negligence action against respondent.

3. *Appellant's claim that respondent negligently supervised her class does not preclude application of the doctrine of primary assumption of risk*

Appellant advanced a second factual/legal point in conjunction with her effort to dispute three other undisputed facts submitted by respondent in support of its motion. Respondent asserted, first, that it was not unusual to conduct a class with six adults or to have children in the same class as adults and that it was "easy" for a master to maintain order and discipline because order and discipline are "fundamental" to tae kwon do. Respondent also asserted that the class was, in fact, being conducted in an orderly fashion before appellant was injured. Respondent further asserted that, while the adults were lined up waiting to kick, they were "orderly," and there was "no unusual activity in the adult student practice line." Appellant disputed all three facts, alleging as to the first that an "orderly and disciplined teaching environment was not maintained," while she waited in line, and that the "supervision was insufficient." As to the second, she asserted that the class was "not being conducted in an orderly manner." As to the third, she asserted that the students were not orderly while waiting but were instead "talking, and practicing kicks when they were not supposed to." In support of her claims, appellant offered excerpts from her deposition, in which she testified that, just before she felt contact with her leg, she heard people in her class "practicing and laughing and talking." She also presented a declaration from her 12-year-old daughter, Roxana, who was participating in the children's class on the day her mother was injured. Roxana declared that, before her mother was injured, she (Roxana) observed adult students talking to each other and doing practice kicks in contravention of instructions—apparently from Master Kim—not to talk or practice "moves" while in line.

Appellant's second point also reflects a misunderstanding of the doctrine of primary assumption of risk. Appellant's factual/legal presentation was designed to raise a triable issue of fact regarding respondent's negligent supervision of her class. However, appellant failed completely to raise a triable issue of fact regarding respondent's having *increased* the risks associated with learning tae kwon do, as she was required to do to avoid entry of

summary judgment in respondent's favor under the doctrine of primary assumption of risk. (Cf. *Bushnell, supra,* 43 Cal.App.4th at p. 530.)

Here, if we view appellant's factual showing in the light most favorable to her (*Tan, supra,* 13 Cal.App.4th at p. 1530), she established that respondent instructed the adult students not to talk or practice kicks while waiting to kick the target. Appellant presented no evidence to establish the purpose of those instructions. However, for purposes of discussion, we will assume that they were intended to enhance concentration and improve learning and/or to lessen the risk of injury occasioned by unsupervised kicks. Appellant argued that respondent's failure to assure compliance with its own rules constituted negligent supervision—negligence that increased the risk of her being kicked. Appellant confuses the duty to use due care to avoid injury to another with the duty not to increase the risks inherent in a sport.

As reflected above, instructors do not owe a general duty of due care to their charges; they owe a duty not to increase the risks inherent in the sport they are teaching. (See *Bushnell, supra,* 43 Cal.App.4th at pp. 533-534.) Here, Master Kim may have instructed his students not to practice kicks while in line as a means of enhancing the safety of class members; however, his assumed failure to supervise his students to assure compliance with his instructions constitutes nothing more than a lack of due care. (See *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1118-1119 [75 Cal.Rptr.2d 801] (*Aaris*), citing *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360].) Those instructions did not *increase* the risk of injury inherent in learning tae kwon do.

If Master Kim had set up a drill in which students were instructed *to* practice their kicks while their classmates' backs were turned with knowledge that some of his students habitually kicked in a dangerous manner, ordering participation in that drill might arguably have increased the risks associated with learning tae kwon do. (See *Tan, supra,* 13 Cal.App.4th at pp. 1530-1531, 1535-1536.) Here, however, no evidence was presented establishing that Master Kim instructed his students to do—or not to do—anything that enhanced the risks associated with learning tae kwon do. Accordingly, appellant's claim that respondent failed to supervise the class does not defeat application of the doctrine of primary assumption of risk.[4]

---

[4]We note, in passing, that even when a person or entity has a statutory duty to supervise the activities of others—such as the duty to supervise pupils imposed on teachers and public schools under Education Code section 44807—such a statutory duty "does not 'trump' the

## IV. DISPOSITION

The judgment is affirmed. Appellant to bear costs of appeal.

Corrigan, J., and Pollak, J., concurred.

---

doctrine of primary assumption of risk" in all contexts. (See *Aaris, supra,* 64 Cal.App.4th at p. 1119.)